[No. 31921.   Department Two.   January 16, 1953.]

MID-COUNTY PUBLISHERS, INC., *Respondent*, v. HAROLD
LEMAY *et al., Appellants.*[1]

[1]Reported in 252 P. (2d) 268.

*Metzler & McCormick* and *Hal D. Murtland*, for appellants.

*Jacobs & Peters*, for respondent.

HAMLEY, J.—This is an appeal from a judgment rendered against Harold LeMay and wife in favor of Mid-County Publishers, Inc., for damages resulting from the negligent handling of a printing press during hauling operations.

At the time the accident occurred, William J. Culver, William Chase, C. E. "Jack" Brown, and Charles J. Fulwiler were copartners operating a printing establishment in Tacoma, and were in the process of incorporating Mid-County Publishers, Inc. After the accident, the corporation was formed, and the partners assigned to it any cause of action which they had against LeMay.

During the month of January, 1950, the partners decided to move to Puyallup. LeMay, who is engaged in certain contract carrier truck operations, was an advertiser in a publication which they issued. He came to the plant, talked to some of the partners, inspected and measured the equipment, and made an offer to haul it, which offer was accepted. Some of the lighter equipment was hauled February 1st.

On the morning of February 2nd, LeMay drove up with a heavy truck and semitrailer with a flat bed, which he backed up to the curb for the purpose of loading a printing press weighing about five tons. It was in the rear of the shop. Part of the front of the building was removed in order to permit the press to be moved. A ramp was built from the front of the building to the top of the truck. It consisted of 2x12 planks, under which cribbing was built.

A heavy cable, attached to a winch at the front of the

truck, extended back over an "A" frame to the press. The end of the cable was wrapped around the press, and LeMay operated the winch. Rollers were placed under the press and removed from the rear and placed in the front as the moving progressed. Some of the partners and their employees assisted in the moving. LeMay would, by operating the winch, pull the press forward a short distance, and then from time to time would go back to see how the moving progressed. There were no lines on the sides of the semitrailer to prevent anything from falling off. The press was moved up the ramp and practically onto the bed. At about that time, the rear left wheel of the semitrailer sank slightly into the snow and ice, and the press started to move forward and to the left. It seemed to gain momentum and slid off the left side of the bed onto the street. The press was damaged to such an extent that it later had to be sold as junk.

The corporation then brought this action against LeMay to recover damages resulting from the accident. The case was tried to the court without a jury. Findings of fact were thereafter entered, to the effect that LeMay was in exclusive control of the loading operation; that he failed to use ordinary and reasonable care in loading the press; that such failure was the sole and proximate cause of the accident; and that plaintiff was thereby damaged in the sum of $4,-835.02. In addition, the court entered conclusions of law to the effect that defendants were "private carriers for hire [the court apparently meaning contract carriers]," and that they were bound by law to exercise ordinary reasonable care with respect to handling cargo. Based upon these findings and conclusions, judgment was entered for plaintiff in the full amount of the ascertained damages. Defendants appeal. In this opinion, Harold LeMay will be referred to as if he were the sole defendant and appellant.

Appellant first questions the findings of fact to the effect that LeMay was in exclusive control of the loading operation. Three witnesses testified that LeMay was in charge of the operation. Appellant produced testimony to the con-

trary on this point. Considering all such evidence, we do not believe it preponderates against the finding of the trial court.

■ Appellant asserts, however, that the testimony favorable to respondent on the question of who was in charge of the loading consisted only of the conclusions of witnesses on a matter which was for the court to decide, and that such testimony was therefore inadmissible. The admission of such evidence has not been assigned as error, and is therefore not before us for review. Rule on Appeal 43, as amended, 34A Wn. (2d) 47, and pocket part. It may be said, however, that David Hibbard, an employee of the corporation, gave testimony not consisting of conclusions from which the trial court could have found that LeMay was in charge of the loading.

■ Appellant next questions the findings relative to negligence and proximate cause.

The trial court found that LeMay was negligent in failing to attach any cable to the press, on either the left or right rear side of the truck, to prevent a sideways slide; that LeMay was negligent in not placing heavy timbers on the ground to divide and distribute the pressure of the truck on the ground; and that the accident was a direct and proximate result of these acts of negligence.

Appellant points out that the testimony on which the trial court apparently relied in making these findings came from witnesses who were not experienced in the loading and hauling of heavy equipment. In support of the view that the court should therefore not have considered such evidence, appellant calls attention to *Hoover v. Goss*, 2 Wn. (2d) 237, 97 P. (2d) 689; and *Peddicord v. Lieser*, 5 Wn. (2d) 190, 105 P. (2d) 5.

The cited decisions deal with the necessity of producing expert testimony in malpractice cases. We are not here concerned with such a specialized field. While disinterested expert testimony would have been helpful, it was not indispensable. In our opinion, the evidence does not clearly preponderate against these findings of fact.

The remaining assignments of error relate to the question of damages.

■ Appellant's first concern in this regard appears to be the finding of fact that, prior to the accident, the printing press had a fair market value of $4,250.

Three witnesses testified that its fair market value immediately prior to the accident was from $5,000 to $5,500. Another witness testified that the fair market value of the damaged press, prior to the accident, was in excess of $6,500.

Appellant argues that the testimony of two of these witnesses was inadmissible, because based upon inspections of the press made an unreasonable length of time prior to the accident. It is also contended that evidence as to the actual sales price of this press at an earlier date, and testimony as to the price paid for a replacement press, were erroneously received.

We cannot consider the question of admissibility, since this was not assigned as error. The fact that a witness as to value had not seen the press for a considerable period of time would have a bearing upon the weight to be accorded this testimony. Here there was credible evidence, however, to the effect that the press was in as good or better condition at the time of the accident as at the time the inspections were made. It is this circumstance which distinguishes the instant case from *Yakima Finance Corp. v. Perkins*, 160 Wash. 379, 295 Pac. 189, relied upon by appellant. We are satisfied that the evidence amply sustains the finding as to market value prior to the accident.

Appellant questions the court's finding that, after the accident, the press had a junk value of only $415. In this connection, they point to the fact that two detachable parts of the press, known as a "feeder" and "extension delivery," were not attached to the press at the time of the accident, and so were not damaged. A printing press machinist, called by respondent as an expert witness, testified on cross-examination that the feeder was worth from $1,500 to $2,000, and the extension delivery was worth from $800 to $1,000.

We need not be concerned about the value of the extension delivery, since the judgment provides that respondent shall deliver to appellant the possession and legal title of that item. With regard to the feeder, the witness mentioned above stated that the figure he gave was not intended as an indication of market value. He testified that this item would have no such value unless another Model-35 Babcock press, on which such part was needed, could be found. The witness knew of no other press of this kind in the Pacific northwest. There was other testimony to the effect that the scrap value of the press was $165, and that respondent received $250 for the motor and operating parts. We conclude that the finding of fact as to the value of the press after the accident is not contrary to the clear preponderance of the evidence.

▇▇ Appellant next directs our attention to the finding of fact that, by reason of the loss of the Babcock press, respondent incurred expense in the sum of $169, representing travel and overtime occasioned in sending its pressman to a printing plant at Auburn.

Paragraph VII of the amended complaint sets out four items of alleged incidental costs in connection with the loss of the press. The $169 referred to above is included, if at all, in the first item, which relates to miscellaneous printing costs. But the total of this claimed item is only $239.72, and of this sum, respondent sought to show that $161 in expenses were incurred in temporary rental of another press. This leaves a maximum of $78.72 claimed in the amended complaint for travel and overtime expenses in sending pressmen to Auburn. An attempt was made at the trial to prove such expenses in the amount of $78.72. Counsel for respondent thereafter acknowledged, however, that insufficient proof as to this item had been presented. The trial court therefore erred in finding that expense in the sum of $169 for such travel and overtime had been incurred, and in including that sum in the judgment.

▇▇ Appellant argues that the trial court should not have included in the judgment a seventy-five dollar item

representing the cost of three months' storage of the damaged press. Citing *Sullivan v. Boeing Aircraft Co.*, 29 Wn. (2d) 397, 187 P. (2d) 312, 174 A. L. R. 566, relative to the duty of mitigating damages, appellant points out that it was known, two days after the accident, that the press was damaged beyond repair. We find evidence in the record, however, tending to show that the storage was reasonably necessary to protect the press from the weather and rust while efforts were being made to sell the press as it was or for salvage. The trial court did not err in allowing this item.

■ The judgment includes an allowance of $217.21 for the installation of three-phase wiring in respondent's shop for the replacement press. Appellant contends that this item of damage is too remote and conjectural. They refer us to *Cannon v. Oregon Moline Plow Co.*, 115 Wash. 273, 197 Pac. 39, and *Dyal v. Fire Companies Adjustment Bureau*, 23 Wn. (2d) 515, 161 P. (2d) 321. These cases state the rule that damages recoverable must be such as are the direct, natural, and proximate consequence of the wrongful act or omission, and such as are established with reasonable certainty.

The evidence shows that the damaged press required single-phase electric wiring, and that this had been completed prior to the accident. After the press was damaged, a different press was installed, and this required replacing all of the single-phase wiring with three-phase wiring. In our view, the expense of this rewiring was a direct, natural, and proximate consequence of the accident, and was properly included in the judgment.

■ Appellant complains of three additional items, as follows: $350, representing the cost of transporting the replacement press to Puyallup; $161 for rental of a press before the replacement press was purchased; and $27.81, representing miscellaneous items. In our opinion, the evidence supports the allowance of each of these items.

■ Appellant's final argument has to do with the disallowance of the cross-complaint for $245, covering hauling charges in connection with the moving of printing plant equipment from Tacoma to Puyallup. The trial court found

that respondent did not owe any sum to appellant for the transportation of this personal property. The evidence is uncontradicted that LeMay and his crew worked seven hours February 1st, ten and one-half hours February 2nd, and seven hours February 3rd. This would amount to $245, under the agreement. On this appeal, respondent makes no contention that this sum is not owing. The trial court therefore erred in disallowing this item as an offset to the judgment.

The judgment is modified by reducing its amount $414, making it $4,421.02. Appellants will recover their costs on this appeal.

SCHWELLENBACH, HILL, FINLEY, and OLSON, JJ., concur.

[1]Reported in 252 P. (2d) 253.