277 So.2d 488 (1973)
Mrs. Mary Jane B. BROUSSARD, etc.
v.
SAIA MOTOR FREIGHT LINE, INC., et al.
No. 9318.
Court of Appeal of Louisiana, First Circuit.
April 24, 1973.
Rehearing Denied May 31, 1973.
Writ Refused June 28, 1973.
Joseph L. Waitz, Waitz & St. Martin, Houma, for appellant.
Risley C. Triche, Triche & Sternfels, Napoleonville, for appellees.
*489 Before LOTTINGER, ELLIS and CRAIN, JJ.
ELLIS, Judge:
This case arises out of an automobile accident which happened between a tractor-trailer owned by Saia Motor Freight Line, Inc., and operated by Alton J. Siner, and a pickup truck owned by Cooper Brothers Welding Service, Inc. and operated by Ronny W. Lightsey. Lloyd J. Broussard was a guest passenger in the Lightsey vehicle. Mr. Broussard died as a result of the accident. Plaintiff herein is Mrs. Mary Jane B. Broussard, his widow, individually and as natural tutrix of her minor children Lloyd J. Broussard, Jr. and Michael Joseph Broussard. The defendants are Saia Motor Freight Line, Inc.; its insurer, Aetna Casualty & Surety Company; Alton J. Siner, and Ronny W. Lightsey. Saia, Aetna, and Mr. Siner filed a third party demand against Ronny W. Lightsey, alleging that the accident was his sole responsibility, and alternatively asking for contribution. Trial was held before a jury which rendered special verdicts to the effect that the negligence of Alton J. Siner was the sole proximate cause of the death of Lloyd J. Broussard; that Ronny Lightsey was not negligent; that Lloyd Broussard was not contributorily negligent; that Lloyd Broussard did not assume the risk of the accident which caused his death, and awarded damages totalling $396,000.00.
The trial court refused a motion for a new trial and for a remittitur and signed a judgment in accordance with the jury's verdict. From that judgment, Saia, Aetna, and Siner have taken a suspensive appeal.
At about 1:00 o'clock on the morning of December 4, 1969, Mr. Siner was operating a large tractor-trailer rig owned by Saia in a westerly direction on U. S. Highway 90. As he approached the bridge over Bayou Boeuf, the weather was clear. The Bayou Boeuf bridge is a long, high bridge. From its summit to the westerly end is a distance of some 1829 feet along a 5% grade. When Mr. Siner came to the summit of the bridge, he testified that he saw a fog bank approximately 50 feet in front of him. He was then traveling at approximately 5 miles an hour in second gear. He entered the fog bank, which he stated was so thick that he was unable to see the road or the railing of the bridge. In order to keep his truck moving at the same slow rate of speed, Mr. Siner testified that he was forced to continually apply the foot pedal brake as the truck descended the bridge. When he reached a point 210 feet west of the westerly end of the bridge, his continual application of the brake had so depleted the air supply in the tanks of the tractor that a relay valve installed for that purpose caused the brakes on the trailer to lock. At that point, Mr. Siner's truck was stopped entirely in its proper west bound lane of the highway. He then proceeded to race the engine of his tractor in order to build up the air pressure to a point sufficient to permit the brakes to release.
While he was doing this a State Trooper came down the bridge behind him. The Trooper testified that when he came over the top of the bridge he saw the fog bank ahead, but stated that it encroached only on the westerly ten feet of the bridge, contrary to the testimony of Mr. Siner. He slowed his vehicle down to a speed of 20 miles an hour, and entered the fog bank. He was able to discern the flashing lights on the truck in time to pull his car onto the shoulder of the road. He ran around to the driver's side of the truck, but was unable to talk to Siner because of the noise being made by his engine racing. He thereupon ran around to the other side of the truck, got into the cab, and told Siner to get the truck off of the road. At about that time, the air pressure had built up to the point where the brakes released. Thereupon, the Trooper went to the front of the truck in order to guide Siner off of the traveled portion of the highway. When the truck had moved forward approximately 15 feet, the accident happened.
*490 According to Mr. Lightsey, he was returning from Westwego to Morgan City in a pickup truck. Mr. Broussard was asleep next to him in the front seat of the truck. He said that he was going about 50 or 55 miles an hour when he came over the top of the bridge. He stated that he saw the fog bank about one quarter to one half of the way down the bridge. He said that as he entered the fog bank, he began to apply his brakes lightly to slow down. Shortly thereafter, he saw the lights of the trailer ahead of him and applied his brakes, but was unable to avoid the collision. He did not recall the distance that he traveled before the accident. He did not recall his speed at the time of the accident, but he did testify that he was unable to see more than a foot or a foot and a half in front of him in the fog. He did admit that he was going at a fair rate of speed when the impact happened. Mr. Lightsey left 12 feet of skid marks leading up to the point of the collision, and struck the tractor-trailer rig with sufficient force to knock the tractor engine off of its motor supports and into the radiator, and to totally demolish the pickup truck.
Of Mr. Lightsey's negligence there can be no question. He was driving through a bank of fog and smoke which, by his own testimony, was impenetrable to the sight, at a rate of speed of some 40 to 45 miles per hour. The duty imposed on a driver who is proceeding under conditions of reduced visibility was expressed in the recent case of Campbell v. American Home Assurance Company, 260 La. 1047, 258 So.2d 81 (1972), as follows:
"It is well settled that when visibility is impaired by smoke, fog, or other unfavorable atmospheric conditions, a motorist must exercise care in the operation of his vehicle commensurate with the danger created by the conditions. He must reduce his speed and maintain a close lookout. As an extreme measure, when visibility is destroyed or greatly obscured, he must stop his vehicle until conditions permit him to resume travel in reasonable safety."
We hold that the jury was in error in finding Mr. Lightsey to be not guilty of negligence proximately causing the accident.
As to Mr. Siner, a more difficult question is posed. We pretermit the question of whether or not he was negligent in applying his brakes in such a manner as to exhaust his air supply, because, at the moment of the accident, his truck was in motion and, therefore, no longer obstructing the highway within the meaning of R.S. 32:141.
We cannot, however, absolve Mr. Siner from negligence. All of the witnesses who testified as to the conditions of visibility stated that it was impossible to see anything or any distance. The Trooper testified that it was unsafe to drive at any speed, and did, in fact, close the highway to traffic immediately after the accident. Under those circumstances, a driver is obligated to stop his vehicle, as stated in the Campbell case, supra.
The driver who must stop because of lack of visibility is therefore required to remove his vehicle from the traveled portion of the highway if it is possible to do so.
R.S. 32:141 (A) provides as follows:
"Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway."
*491 In this case, the testimony shows that Mr. Siner was 210 feet west of the end of the bridge when his brakes locked. Photographs in the record show that there was an adequate shoulder of the road for that entire distance.
We hold that a driver who is confronted with conditions of no visibility whatsoever is obligated, under the authorities hereinabove cited, to stop his vehicle off of the traveled portion of the highway at the earliest opportunity, and remain there until conditions have improved to the point where it is safe to proceed.
Mr. Siner had ample opportunity to do this before his brakes locked, and failed to do so. His negligence in this case lies in failing to get off the highway and stop, and we hold this negligence to be a proximate cause of the accident, rendering him and his employer and insurer liable for the death of Mr. Broussard as a result of the accident.
Appellants alternatively claim that the amount awarded by the jury as damages is excessive.
The record reveals that Mr. and Mrs. Broussard were married in October, 1960, and that they had a reasonably happy marriage without separation or other major difficulty. She was 24 years old when he died. At the time of Mr. Broussard's death, there were two sons born of the marriage, about eight and three years of age. Mr. Broussard had been steadily employed throughout the marriage and was a good provider for his family. At the time of his death, he was earning gross wages, including fringe benefits, in excess of $16,000.00 per year. He was 29 years of age and had a work life expectancy of 32.3 years from the date of his death. W. E. Groves, an actuary, testified that his earning expectancy, based on the above figures and using a discount rate of 4½ had a value of $282,257.00, as of the time of trial. He also computed an additional inflation factor at two per cent. per annum, and arrived at a figure of $78,935.00 additional because of anticipated inflation. Those two figures, added to $31,507.00 in wages lost between the date of death and the date of trial, totalled $382,699.00.
When he was injured, Mr. Broussard suffered a fractured jaw, a broken rib, various lacerations and internal injuries which resulted in a ruptured spleen. The accident happened on December 4, 1969, and a splenectomy was performed on December 9, 1969. Surgery was performed on his jaw and it was wired in place on December 17, and on December 19, Mr. Broussard was discharged from the hospital. He was readmitted on the afternoon of December 26, and died just after midnight on December 27, 1969, of a pulmonary embolism. It is not disputed that his death resulted from the accident. The evidence is to the effect that Mr. Broussard's condition and the operative procedures performed were extremely painful.
In examining the awards made by the jury, we must be guided by the principles enunciated in the cases of Gaspard v. LeMaire, 245 La. 239,150 So.2d 149 (1963), and Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964). Our authority is limited to determining if the awards made below are so excessive or inadequate as to constitute a breach of the great discretion vested in the trial forum in these matters.
In making the award of $396,000.00, the jury broke it down into categories such as loss of love and affection by Mrs. Broussard, loss of love and affection for the children, and pain and suffering of Mr. Broussard prior to his death. They also made an award for special damages, and for loss of support. If the various awards were to be considered individually, we would have to find that some were so excessive as to constitute an abuse of discretion. On the other hand, the award for loss of support is somewhat low.
Looking at the entire picture, however, and considering the total award *492 in that light, we are of the opinion that there is no abuse of the discretion vested in the jury. We do not find it necessary to pass on the propriety of the awards made in each category when the sum of those awards is within the bounds of the great discretion enjoyed by the trier of fact.
The judgment appealed from is therefore reversed insofar as it dismisses plaintiff's suit as to Ronny W. Lightsey, and there will be judgment herein in favor of plaintiff and against Saia Motor Freight Line, Inc., Aetna Casualty & Surety Company, Alton J. Siner, and Ronny W. Lightsey, in solido, in the sum of $396,000.00 plus legal interest from date of judicial demand until paid; there will be further judgment on the third party demand in favor of Saia Motor Freight Line, Inc., Aetna Casualty & Surety Company, and Alton J. Siner, and against Ronny W. Lightsey for one-half of the amount for which third party plaintiffs have been cast in judgment. In all other respects, the judgment appealed from is affirmed, at defendants' cost.
Reversed in part, amended in part, and rendered.