CULPEPPER, Judge.
This is a suit for damages for personal injuries sustained in an automobile accident on November 5, 1971. Plaintiff was a passenger in the second of three cars which were stopped in line at an intersection. A heavily loaded log truck was un'able to stop. It struck the rear most car, which in turn violently struck the car occupied by plaintiff.
The defendant insurer of the truck driver admitted liability. The sole issue tried was the quantum of damages.
Plaintiff’s principal injury was a myo-ligamentous sprain of the neck, commonly referred to as a “whiplash”. The district judge awarded $15,000 in general damages, $13,406.16 for loss of past and future earnings as a substitute mail carrier and $1,465.-65 in medical expense, for a total of $29,871.81. The defendant appealed, complaining particularly of the award for loss of earnings. Plaintiff answered the appeal, seeking additional loss of future earnings from his farming and cattle raising operations.
Plaintiff is 48 years of age and is a disabled war veteran. He lost his left hand and wrist during World War II. With the help of his two sons, he worked a farm and raised cattle. In addition, he worked as a substitute mail carrier one day per week. He says he grossed about $6,000 Per year from the farm and about $1,100 Per year from his job as a mail carrier,
The district judge has giyen a fair sum_ mary of the evidence as follows:
“Following the collision, Birdwell was taken to the Natchitoches Parish Hospital and received initial treatment and examination by Dr. Joseph A. Thomas. Birdwell remained confined in the hospital until November 19, 1971, a period of 14 days. Dr. Thomas recorded that Birdwell hád lacerations on the left side of his face; the left ear lobe was cut through and across the ear lobe with glass fragments embedded therein. Dr. Thomas visited Birdwell while he was in the hospital and during this time treated the patient with antibiotics, pain killers and muscle relaxants. X-rays of the patient revealed no fractures. Birdwell was given physical therapy and sound wave treatment. On Birdwell’s release from the hospital, he was still suffering pain in the cervical area. On two later occasions, additional glass was removed from the area back of his left ear.
“Dr. Thomas stated his records show office visits for treatments to Birdwell on December 3, 13 and 23, 1971; January 31, 1972; March 23; April 14; June 8 and August 8, all in 1972. On the last visit, Birdwell still complained of pain and there were mild spasms in his neck and both shoulders. Dr. Thomas recommended limiting his activity and do what he could do without pain.
“At this date Dr. Thomas felt Birdwell had reached his maximum improvement. All the Doctor could prescribe was aspirin or similar conservative medicines.
“Dr. Thomas had previously written a letter to the effect that Birdwell would not be able to continue as a substitute mail carrier. That the duties of this job —reaching—stretching—movement of *576 the neck muscles would produce pain. It was Dr. Thomas’ opinion that such a job would produce such pain to Birdwell as to prevent his doing the job. The Doctor’s final evaluation of Birdwell’s physical was that he could do about 50% of the work he did prior to November 5, 1971, without suffering pain. Dr. Thomas, however, could not give any clear cut formula for reaching this opinion. Birdwell was not referred to an orthopedic surgeon as Dr. Thomas was of the opinion he had reached maximum recovery in August, 1972. One consideration in Dr. Thomas’ conclusion was the fact Birdwell had the use of only one hand and many adjustments were necessary for him to make in his farm operation and as substitute mail carrier.
“Dr. Carl Goodman, an orthopedic surgeon, examined Birdwell on one occasion, March 29, 1973. Dr. Goodman found no objective symptoms and found nothing medically to prevent Birdwell from working on the job as mail carrier. Dr. Goodman stated that pain is subjective and is immeasurable. It is only evident by muscle spasms. The Doctor stated he had no reason to believe that Birdwell was being untruthful when he described suffering pain.
“Description of Birdwell’s condition and activities during the months following November 5, 1971, was told by Mrs. Maxine Jennings Birdwell, his wife. She described a slow improvement in her husband’s condition during the months following his injury. His inability to rest and complaints. How sleeping arrangements had to be made at the home so she, as well as her husband, could obtain rest. Mrs. Birdwell described the general good health of her husband prior to the accident. That after the accident, Mr. Birdwell was unable to drive a car for several months. His job as substitute mail carrier had to be given up.
* * * * * *
“There are no records of the farm income received by Birdwell except the Income Tax returns for 1971 and 1972. The 1971 report shows a loss of $2,414.-20.
“The 1972 report shows a gain of $322.-00. There was labor hired in 1971 at a cost of $300.00 but none hired in 1972.
“The injuries received by Birdwell did result in his loss of the job as substitute mail carrier. The eight years that are reflected on the W-2 forms show income totaling $8,937.40. This would be an average income of $1,117.18 per year. Mr. Birdwell was 48 years of age at the time of his injury. It is more-probable-than-not that he could have maintained his gainful employment as mail substitute employment until his 60th birthday or a period of 12 years.
“The evidence does not preponderate in Birdwell’s favor as to farm losses or expenditures by reason of his physical condition. His 1972 Income Tax returns show a profit as against losses in 1971.”
Defendant contends the testimony of Dr. Goodman, a Board Certified Orthopedic Surgeon, should be given more weight than that of the treating physician, Dr. Thomas, who is a general practitioner. The testimony of these physicians is in conflict. Dr. Thomas stated that due to scar tissue resulting from the healing of the sprained neck ligaments, plaintiff has pain on turn-' ing his head more than 50 degrees to the side, and that this is a permanent condition. Dr. Goodman testified that as of the date of his examination approximately 17 months after the accident, plaintiff had no residual disability from the accident.
The district judge did not expressly find that plaintiff’s disability is permanent, but he did find plaintiff is unable to perform his duty as a substitute mail carrier. This necessarily means he found plaintiff’s condition is permanent, at least to a degree.
We find the evidence as a whole, including that of the lay witnesses, is suf *577 ficient to support the finding of the trial judge that plaintiff does have some permanent disability.
Having reached this conclusion, the award of $15,000 in general damages is within the range of the much discretion of the trial judge.
As to the award for loss of earnings as a substitute mail carrier, defendant contends the trial judge used an incorrect measure of damages. Defendant says the language of the above quoted opinion shows the award for loss of earnings was based on the fact that the injuries caused plaintiff to lose his job, rather than on a finding that plaintiff is disabled from performing the duties of a substitute mail carrier or work of a similar kind. Defendant cites Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968) for the rule that plaintiff must prove loss of future earnings by showing that he is incapacitated from doing work of the same or a similar kind for which he is fitted by training and experience.
A reading of the entire opinion of the trial judge shows he intended to apply the correct rule. As stated above, he found plaintiff is physically disabled to a degree. We construe his opinion to mean that because of these injuries plaintiff was no longer able to perform his duties of substitute mail carrier or similar employment. We do not construe the opinion to mean that regardless of whether Birdwell was permanently disabled, the injuries caused him to lose his job and he is therefore entitled to receive future wages which he would have earned from that particular employment. This obviously would be an improper test.
As to the amount of loss of future earnings due to plaintiff’s disability, the measure of damages used by the trial judge appears to be within the range of his great discretion. He estimated that had it not been for the injuries, plaintiff could have probably earned for another 12 years the average annual amount which he had been earning as a mail carrier.
Defendant complains that this approach does not take into account the fact that plaintiff could probably do some lighter type of work or that he may not in any event have worked for another 12 years. On the other hand, plaintiff complains in his answer to the appeal that he may have been able to work for more than another 12 years. Under all of the circumstances, we find no abuse of discretion in the estimate of the trial judge as to loss of future earnings.
It may be that in this particular case the loss of future earnings cannot be proved with exact mathematical precision. The problem is complicated by the fact that plaintiff had no left hand or wrist and his employment opportunities were limited. The recent case of Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971) is authority for the proposition that where loss of future earnings cannot be proved with mathematical certainty, the court can nevertheless make an award for such earnings where it appears with reasonable certainty that there will be such a loss. The evidence here satisfies this rule.
In his answer to the appeal, plaintiff also complains the trial judge erred in failing to award loss of future earnings from the farm and cattle raising operations. As the trial judge states in his opinion, plaintiff’s income tax return for 1972 actually shows he earned more following the accident than he did before. We agree with the trial judge that the evidence is insufficient to show with any reasonable certainty that plaintiff will suffer loss from his farming operation.
In any event, where the total award is within the bounds of the great discretion enjoyed by the trier of fact, the reviewing court need not pass on the propriety of each item of the award with such particularity, Broussard v. Saia Motor Freight Line, Inc., 277 So.2d 488 (La.App. *578 1st Cir. 1973); Duplechin v. Pittsburg Plate Glass Company, 265 So.2d 787 (La.App. 3rd Cir. 1972). This rule is also applicable here.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.
MILLER, J., dissents and assigns written reasons.