ERA HELICOPTERS, INC., Appellant,

v.

DIGICON ALASKA, INC., Appellee.

No. 1901.

Supreme Court of Alaska.

Feb. 11, 1974.

H. Russel Holland, of Holland & Thornton, Anchorage, for appellant.

D. A. Burr, of Burr, Pease & Kurtz, Inc., Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

### OPINION

RABINOWITZ, Chief Justice.

In 1970 Digicon Alaska, Inc. began a combined gravity and seismic survey in the Norton Sound region of Alaska. Digicon contracted with ERA Helicopters, Inc., for logistical support of the former's shore stations and for transportation of supplies and personnel between the shore and Digicon's offshore survey vessel. On July 13, 1970, an ERA helicopter was dispatched to Digicon's offshore vessel to remove an S–33 gravity meter so that welding could be carried out on the vessel without damaging this sensitive meter. The S–33 gravity meter was crated and strapped to the helicopter and transported to shore. When the welding was completed, the helicopter left shore to return the S–33 meter to the vessel. Unable to locate the vessel and unable to return to shore because of lack of fuel, the pilot set the helicopter down in Norton Sound. While awaiting rescue, the helicopter overturned and the S–33 meter broke free of its bindings. Subsequently, the gravity meter was recovered in a damaged condition when it was washed ashore.

Thereafter Digicon sued ERA basing its claim for property and business disruption damages on ERA's negligence.[1] At trial Digicon presented evidence both of the property damage to the S–33 meter and of the business disruption losses which were sustained until a replacement gravity meter could be obtained. Digicon was without a gravity meter on its offshore survey vessel for a period of 25 days. On August 6, a new gravity meter, the S–47, was installed on the vessel, and the gravity readings for the combined survey resumed. The jury awarded Digicon $49,651 for property damages to the S–33 gravity meter and $98,668 in damages for business disruption losses. In entering judgment on the jury's verdict the trial court granted

---

1. The jury found ERA negligent. No issue as to ERA's negligence has been raised in this appeal.

to Digicon prejudgment interest on the damages awarded from the date of the loss. Attorneys' fees were computed, under Civil Rule 82, on the total of the jury damage award plus prejudgment interest.

In this appeal ERA advances the following assertions of error: (1) that the superior court erroneously instructed on the measure of damages for business disruption losses, (2) that the jury award for business disruption losses was excessive and contrary to the court's instruction, (3) that the jury award for damages to the gravity meter was likewise excessive and contrary to the court's instruction, (4) that attorneys' fees were improperly computed, and (5) that the superior court erred in awarding prejudgment interest in light of ERA's recovery of business disruption damages.

■ ERA's initial claim is that the superior court erred in its instruction on business disruption damages and in refusing to give ERA's proposed instructions on this subject. The trial court's instruction relating to business interruption losses reads as follows:

> If you find that the loss of the gravity meter was proximately caused by the negligence of the helicopter pilot, Jack Bond, you may award as damages to the plaintiff such amount as will compensate for the business interruption, including but not limited to the standby time of the crew aboard the vessel and the costs related to the delay in completion of the seismographic work for the client of plaintiff.

ERA contends that this instruction gave the jury no guidelines as to what damages would be too remote to be recoverable under the business interruption claim.

In addition to the quoted instruction, the jury received two further instructions which have direct relevance to ERA's assertion of error.[2] By virtue of these instructions the jury was required to limit damages awarded for business interruption to those proximately resulting from ERA's negligence and to exclude from its award any business interruption losses which could have been prevented by Digicon. In our view the combined effect of the three instructions was to furnish adequate guidelines to assist the jury in its resolution of the business interruption damage issue.

In concluding that the trial court's instruction was not erroneous, we further hold that no error was committed in declining to give either of ERA's proposed instructions going to the issue of business interruption damages.

■ ERA's first requested instruction on this subject would have established the value of the S–33 gravity meter at the time of its loss as the maximum amount of damages recoverable, both for the damages to the gravity meter itself and for business interruption damages.[3] ERA envisions that a "Pandora's Box" will be opened unless such an upper limit is placed on recoverable damages in a tort action involving injury to property. The general rule underlying tort damages is that the injured party is entitled to be placed as nearly as possible in the position he would have occupied

2. Jury Instruction No. 23 reads in part:
A plaintiff who has suffered damages as a *proximate result* of some negligent act on the part of a defendant or its agent is entitled to recover compensation for such damages from that defendant (emphasis added).
In Instruction No. 27 the jury was informed that:
A person whose property has been damaged by the wrongful act of another is bound to exercise reasonable care and diligence to avoid loss and to minimize the damages, and he may not recover for losses which

should have been prevented by reasonable efforts on his part or by expenditures that he might reasonably have made.

3. Appellant's Proposed Jury Instruction No. 4 reads:
If you determine liability in favor of plaintiff and against one or the other or both of defendant ERA and ONI, your award for diminution in market value or repairs, if any, and for loss of use, if any, may not exceed the total amount [of] your determination of the reasonable value of the gravity meter at the time of its loss.

had it not been for the tortious conduct.[4] Under ERA's proposed instruction, this general rule would apply only until the amount of sustained damages reached the market value of the damaged property at the time of loss. Any further recovery would be foreclosed. The case at bar does not involve the question of allowance of damages for loss of use in the circumstance where the property is totally destroyed.[5] Digicon was awarded damages for the dimunution in value of the S-33 meter and for damages sustained during the time necessary to obtain a replacement gravity meter.[6] The damages which were awarded by the jury were those proximately resulting from ERA's negligent act. In light of these circumstances, we are not persuaded that adoption of ERA's upper limit on business interruption damages is appropriate.

ERA's second proposed instruction pertaining to this issue would limit its liability to only those damages to which ERA knew or should have contemplated it would be exposed at the time it contracted with Digicon.[7] This requested instruction reflects a general argument urged by ERA that a carrier who is not on notice of "special damages" may not be held liable for such damages. This theory of non-liability

for nonforeseeable damages is usually found in the setting of a contract case.[8] Although the relationship of ERA and Digicon was defined by contract, the case at bar was litigated in tort. The general rule that all damages, whether special or general, which are proximately caused by a party's tortious actions are recoverable provides a workable standard. We find unpersuasive ERA's contentions that it should be accorded special treatment as to liability for damages resulting from its negligence.[9]

ERA next argues that even if the trial court's instructions relating to business interruption losses were correct, the jury's award of $98,668 was excessive and contrary to the court's instructions.

Digicon introduced evidence that its offshore vessel was without a gravity meter for a period of 25 days after the loss of the S-33 meter. Digicon also presented evidence that the costs of its operations in Norton Sound came to $4,135.95 daily. Thus the damages flowing from the 25-day delay due to the absence of a gravity meter were calculated by Digicon to be slightly in excess of $103,000.

ERA points out that the survey being conducted by Digicon involved both gravity and seismographic operations. The ab-

4. Beaulieu v. Elliott, 434 P.2d 665, 670–671 (Alaska 1967).

5. There is a current dispute among courts as to the propriety of allowing loss of use damages in a case involving the total destruction of property. *See* State v. Stanley, 506 P.2d 1284, 1292–1293 n. 17 (Alaska 1973).

6. *See* Restatement of Torts § 928 (1938). Digicon had the S-33 meter replaced rather than repaired because the complexity and relative scarcity of gravity meters made replacement the less expensive option. *See* note 13 *infra*.

7. This instruction reads in pertinent part:
   Before you consider such special damage claims, you must determine whether or not it was known or should have been contemplated by ERA at the time it contracted with plaintiff that plaintiff would be exposed to incurring such special items of damage as those specified above if the gravity meter was not promptly delivered to the Sit-

kin [Digicon's offshore vessel] . . . . If you determine that ERA did not know and is not chargeable with responsibility to contemplate that failure to promptly redeliver the gravity meter . . . would expose it to . . . the above items of special damages, then you will disregard plaintiff's evidence as to any such items of damage.

8. *See, e. g.*, Hadley v. Baxendale, 9 Exch. 341, 23 S.Ct. 754, (1854) ; Globe Refining Co. v. Landa Cotton Oil Co., 190 U.S. 540, 47 L. Ed. 1171 (1903) ; 5 A. Corbin, Contracts § 1007 (1964) ; 11 Williston on Contracts § 1344 (3d ed. 1968) ; McCormick on Damages § 138 (1935).

9. *See* Western Cas. & Sur. Co. v. J. R. Adams, Inc., 465 P.2d 794 (Okl.App., 1970) ; Mid-County Publishers, Inc. v. Le May, 41 Wash. 2d 852, 252 P.2d 268 (1953) ; 2 Harper and James, Torts § 25.5 (1956).

sence of the gravity meter from the vessel prevented Digicon only from conducting its gravity readings; the seismic survey was able to continue unabated. Since seismic work was conducted by Digicon during the 25-day period that the gravity meter was lost, and since some seismic work was done even after the return of a gravity meter to the vessel, ERA reasons that within the award of $98,668 is included part of the cost of the seismic operation and that the award is therefore excessive.

We find little merit in ERA's argument on this point. To begin with, it appears that the jury did discount the alleged damages of $103,000 to reach their award of $98,668. Furthermore, the key inquiry on this damage issue is how long a period of delay in completion of the Norton Sound project was occasioned by the loss of the S–33 meter. Testimony adduced at trial indicates that the loss of the gravity meter probably delayed completion of the project by at least 25 days. Seismic readings were taken aboard the Digicon offshore survey vessel during the period the vessel was without the S–33 gravity meter. When the replacement meter was finally installed on August 6, much of the seismic work on the Norton Sound project had been completed. The vessel had to retravel, however, the same territory covered for seismic work in the absence of the gravity meter in order to take gravity readings. Thus 25 additional days were probably spent on the Norton Sound project by Digicon as a direct result of the loss of the gravity meter.

In Fruit v. Schreiner [10] this court established the rule that in determining whether a jury's verdict is excessive a court should set aside only those awards that are "manifestly unjust." [11] Since we have determined that the jury could reasonably have concluded that ERA's negligence caused a 25-day delay in the completion of the seismographic survey, and since the cost per day of the operation for Digicon was approximately $4,000, it was not a manifest injustice requiring reversal for the jury to have awarded business disruption damages to Digicon in the amount of $98,668.[12]

ERA also claims that the jury award of $49,651 for property damage to the S–33 gravity meter is excessive and contrary to the court's instruction. The instruction in question reads as follows:

The evidence discloses that a gravity meter was lost as a result of the helicopter accident. If you find defendant liable for such loss, you are instructed that you may award the lesser of two figures only, which are arrived at as follows:

One figure is the reasonable expense of necessary repair of the property, plus the difference between the fair market value of the property immediately before the occurrence, and its fair market value after the property is repaired.

The other figure is the difference between the fair market value of the property immediately before the occurrence and the fair market value of the unrepaired property immediately after the occurrence.

---

10. 502 P.2d 133 (Alaska 1972).

11. In Fruit v. Schreiner we adopted the same test that we had previously articulated for ascertaining whether damages awarded by a court in a non-jury case were excessive so as to require a new trial on the damage issues:

We shall not set aside an award on a claim of excessiveness unless it is so large as to strike us that it is manifestly unjust, such as being the result of passion or prejudice or a disregard of the evidence or rules of law. 502 P.2d at 145, *quoting from* Beaulieu v. Elliott, 434 P.2d 665, 676 (Alaska 1967).

*See also* Frantz v. Knights of Columbus, 205 N.W.2d 705 (Iowa 1973); Broussard v. Saia Motor Freight Line, Inc., 277 So.2d 488 (La. App.1973); Baca v. Baca, 81 N.M. 734, 472 P.2d 997, 1004 (N.M.App.1970).

12. Inasmuch as we have concluded that the 25-day absence of the gravity meter from Digicon's vessel was sufficient to warrant the damages for business disruption awarded by the jury, it is unnecessary for us to comment on whether Digicon could rightfully recover any damages for rental expenses incurred on a seismographic contract entered after the loss of the meter was known.

You may award as damages the lesser of these two figures only.

ERA first argues that this instruction states that only the lesser of the two possible figures may be awarded as damages. ERA then computes the cost of repair to the damaged S–33 gravity meter to be only $30,535.88.[13] Since this figure is less than $49,651, ERA urges that the jury erred in awarding the latter figure for damage to the S–33 meter.

■ ERA's argument on this point must fail. Digicon was without a gravity meter on its offshore vessel for a period of 25 days. The evidence adduced at trial indicates that if Digicon had selected the repair option outlined in the trial court's instruction they would have been without the repaired meter for an additional three months. The rental cost for a replacement meter for this period of repair would have been $27,000, and in our opinion this figure must be included as part of the cost of repair if that option is to be accurately compared with the option which measured the difference in the fair market value of the meter before and after the accident. Because of the time required to repair and the high cost of renting a replacement, the jury could reasonably have concluded that the repair option in the court's instruction was, in fact, considerably higher than the difference in the fair market values.

■ The second part of the court's instruction involves the comparison of the fair market value of the property before and after the accident. ERA argues that since $49,651 was the exact sum due on the new S–47 meter, once the trade-in on the damaged S–33 meter was deducted, the only way the jury could have followed instructions and arrived at this figure was to equate the value of the new S–47 meter with the value of the year-old S–33 meter. ERA urges that such an equation is contrary to the evidence. We disagree.

The chief meter operator for Digicon on the Norton Sound project testified that the S–33 and the S–47 were comparable gravity meters. Further, an executive vice-president for Digicon testified that he knew of no differences between the two gravity meters. There was also evidence introduced that it cost Digicon $2,500 to have the S–47 meter installed and adapted to its vessel. From this the jury could have concluded that the value of the S–33 meter prior to the accident was $2,500 more than its off-the-shelf cost because it had already been fitted and installed on Digicon's vessel. Finally, it is relevant to note that at the time of its loss the S–33 meter was only a year old and was the

13. Digicon introduced into evidence a letter from the manufacturer of gravity meters in which these options were outlined:

#### Option 1

| | |
|---|---|
| Cost on S–47 | $79,651.00 |
| Less sale of S–33 gravity meter to L & R | –30,000.00 |
| Balance | $49,651.00 |

#### Option 2

| | |
|---|---|
| Repair S–33 | $ 8,660.00 |
| Additional cost to make S–33 into a complete gravity system | 80,000.00 |
| Total | $86,660.00 [sic] |

Option 2 would provide Digicon with two complete systems at a cost of $79,651.00 + $86,660.00 = $168,311.00.

#### Option 3

| | |
|---|---|
| Repair S–33 | $ 8,660.00 |
| Replace Gyros, Accelerometers, Synchro, etc. | 9,829.00 |
| Adjust and test with new new electronics | 5,000.00 |
| Rental of S–47 gravity meter unit at 9000/month | 27,000.00 |
| Charge for adjusting and testing S–47 last August | 5,000.00 |
| Trip to Alaska to install S–47 | 2,046.88 |
| | $57,535.88 |

The $30,535.88 figure referred to by ERA is obtained by subtracting the $27,000 rental expense sum from Option 3.

type of machine that with care would last for an indefinite period.[14]

Given the above evidence, we find that the jury could reasonably have concluded that the S–33 meter, before its loss, and the new S–47 meter were of comparable value. With the Fruit v. Schreiner test in mind, we are unable to hold that the jury's award was excessive.

■ ERA next argues that the trial court erred in computing attorneys' fees upon the damages awarded by the jury plus prejudgment interest. ERA asserts that the phrase "money judgment" in Civil Rule 82(a)[15] should be interpreted as referring only to the damage award of the jury and not to the court's award of prejudgment interest, and, consequently, that attorneys' fees should be computed only on the basis of the jury's award.

In Davis v. Chism[16] this court was faced with the task of interpreting the phrase "judgment finally obtained by the offeree" in Civil Rule 68. Justice Connor, writing for the court, stated:

Because pre-judgment interest is in the nature of compensatory damages, it is reasonable for the trial court to include that figure in the "judgment finally obtained by the offeree" and to compare that total to the amount of the offer of judgment.[17]

We regard the conclusion of Chism that prejudgment interest is in the nature of compensatory damages as dispositive of the interpretation of "money judgment" in Civil Rule 82. No compelling reasons have

been advanced why prejudgment interest should not be regarded as part of the money judgment obtained by a party. Both the plain meaning of Civil Rule 82 and the holding of Chism lead us to conclude that the trial court did not err in its method of computing attorneys' fees.

ERA's final contention is that the trial court erred in awarding both prejudgment interest and loss of use damages in the same case. ERA supports this claim by pointing to our recent opinion in State v. Stanley which contains language to the effect that to award prejudgment interest and loss of use damages in the same case would amount to allowance of a double recovery for a party.

■ ERA reads Stanley too broadly. The essence of our holding on prejudgment interest in that case was that to allow prejudgment interest from the date of the loss plus a separate award for the same period of time for damages attributable to loss of use constitutes a double recovery.[18] In Stanley the period covered by loss of use damages was 18 months; in the case at bar the business interruption or loss of use damages cover a period of only 25 days. Here the trial court should have awarded prejudgment interest from August 6 (the day on which Digicon loss of use damages ended) rather than from the date of the loss of the gravity meter. From August 6 onward, Digicon was entitled to interest on the damages which the jury awarded.

We therefore remand the case for the limited purpose of recomputing prejudg-

14. Oregon follows a rule that equates the fair market value of property before damage with its replacement cost. See Mock v. Terry, 251 Or. 511, 446 P.2d 515 (1948). Given the evidence as to the comparable nature of the S–33 and S–47 gravity meters, application of the Oregon rule to the case at bar would result in equating the fair market value of the S–33 meter prior to the accident with the cost of its replacement, the S–47 gravity meter.

15. Alaska R.Civ.P. 82(a) provides in part:
(1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing

such fees for the party recovering any *money judgment* therein, as part of the costs of the action allowed by law:

.      .      .      .      .

(2) In actions where the *money judgment* is not an accurate criteria for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered (emphasis added).

16. 513 P.2d 475 (Alaska 1973).

17. *Id.* at 481.

18. *See* Chesapeake & Ohio Ry. Co. v. Elk Refining Co., 186 F.2d 30 (4th Cir. 1950).

ment interest. This modification in the amount of prejudgment interest awarded will also necessitate an adjustment in the attorneys' fees awarded since these fees were in part computed on the basis of the amount of the prejudgment interest awarded.

Affirmed and remanded for modification.