**BEN LOMOND, INC., and Bobby Jones, Appellants,**

v.

**Calvin K. CAMPBELL, Appellee.**

**No. 7852.**

Supreme Court of Alaska.

Nov. 30, 1984.

---

Kenneth P. Jacobus, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellants.

Stephan H. Williams, Law Offices of Charles E. Cole, Fairbanks, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

This appeal arises out of a dispute over a diesel generator which was purchased at a military surplus property disposal auction. At trial both parties claimed that they had purchased the generator, but the jury found that Calvin Campbell, the appellee, was entitled to possession. Appellants Ben Lomond, Inc. and Bobby Jones (hereafter Lomond), who had taken possession of the generator initially, were assessed $13,000.00 in loss of use damages and $50,000.00 in punitive damages, in addition to being required to transfer the generator to Campbell. Lomond argues in this appeal that (1) the jury instructions regarding these damages were erroneous, (2) the damages were not supported by the evidence, and (3) the damages, even if supported by the evidence, were excessive. We affirm.

## FACTS AND PROCEEDINGS

On April 21, 1982, the Defense Property Disposal Service of the United States Department of Defense conducted an "outcry" auction sale of numerous items of surplus material. One large diesel generator, the subject of this dispute, and one small gasoline generator were proffered for sale at the auction. The auction brochure mistakenly listed each as "generator, G.E.D. used, poor condition." G.E.D. refers to gasoline engine driven. The diesel generator should have been listed as D.E.D. or diesel engine driven. Such mistakes in auction brochures are apparently not uncommon.

At the auction Campbell successfully bid $575.00 on one of the generators, item # 206, while Lomond (represented by Jones) successfully bid $60.00 on the other, item # 203. Both parties testified at trial that they believed they had bought the diesel generator. However, the auctioneer testified that he had announced the mistake in the catalog and specified that item # 206 was the diesel generator.

Prior to the auction, both Campbell and representatives of Lomond, including Jones, had inspected the generators. Campbell, the government employees conducting the sale, and another auction participant all testified that the diesel generator was clearly marked as item # 206 and the gasoline generator was marked as item # 203, both during the inspection period and on the day of sale. A photograph taken by the government's contracting officer, as well as testimony from other witnesses, established that the gasoline generator, still labeled as item # 203, remained in the yard after the sale until trial.

On April 27, 1982, several days after the auction, Campbell went to pick up the diesel generator, but was unable to load it on the small truck he was driving. Jones and another Lomond employee also inspected the diesel generator that day and testified that it was labeled item # 203. This assertion was not corroborated by other witnesses. Jones returned later and picked up the diesel generator. The government warehouseman testified that he "simply messed up" by releasing the diesel generator to Jones.

Campbell was informed that the diesel generator had been released to Lomond when he returned to pick it up. He then went to Jones to demand the return of the property, but Jones refused. Jones called

the government warehouse foreman who informed him that Jones had probably picked up the wrong generator. The foreman asked Jones to check a brown packing list and a white tag which should have been on the generator, but Jones stated that there was "nothing like that." Jones also stated that he was unable to verify the serial number which the foreman had supplied.

Campbell then filed suit in superior court asking for the return of the generator and for compensatory and punitive damages. The jury returned a verdict for Campbell after a three day trial, awarding him the generator, $13,000.00 in loss of use damages, and $50,000.00 in punitive damages. The jury valued the generator at $8,000.00. After the trial court, Judge James Blair presiding, denied Lomond's post-trial motions for JNOV, new trial, and remittitur, Lomond appealed to this court.

## I. LOSS OF USE DAMAGES

### A. Jury Instructions

Judge Blair instructed the jury as to loss of use damages as follows:

> Replevin is a claim for goods wrongfully taken and it entitles the complaining party to the return of the goods as well as damages for the value of the use of. the goods during the period of detention.

Another instruction provided:

> [I]f, after this trial is over, Mr. Campbell's generator is returned to him in good condition, you are further instructed that the measure of damages the plaintiff would be entitled to for the wrongful detention of his generator is the value for use of the goods during the period of detention.

■ Lomond asserts that these instructions were improper since they provide for compensation for the value of the use of the generator during Lomond's possession, without requiring Campbell to have proved actual damages for loss of use or actual benefit to Lomond. In other words,. Lomond argues that loss of use damages may not be awarded based on the hypothetical use value of the generator unless Campbell proves (1) that Campbell would have used the generator during the period of detention, (2) that he incurred expense in obtaining a substitute generator, and (3) that Lomond profited from the detention.

■ Lomond's position is without merit. Instructions analogous to those given by the trial court were expressly approved by this court in *Gregory v. Padilla,* 379 P.2d 951, 956 (Alaska 1963). *See also Rollins v. Leibold,* 512 P.2d 937, 944 (Alaska 1973) (In a replevin action, "the normal remedy is the return of the goods. Damages are also allowed for the value of the use of the goods during the period of detention."). Further, this court has recognized that "rental value ... is one permissible standard for measuring damages for loss of use" of equipment and has rejected a requirement that the injured party "establish ... that in fact he hired a replacement ... before he can establish loss of use [damages] ...." *Burgess Construction Co. v. Hancock,* 514 P.2d 236, 238 (Alaska 1973); *see also Gregory,* 379 P.2d at 956 n. 13.

Our cases are entirely consistent with the Restatement (Second) of Torts § 931 (1979), which provides in relevant part:

> If one is entitled to a judgment for the detention of, or for preventing the use of, land or chattels, the damages include compensation for
>
> (a) the value of the use during the period of detention or prevention or the value of the use of or the amount paid for a substitute ....

Comment b to § 931 provides in relevant part:

> The owner of the subject matter is entitled to recover as damages for the loss of the value of the use, at least the rental value of the chattel or land during the period of deprivation. *This is true even though the owner in fact has suffered no harm through the deprivation,* as when he was not using the subject matter at the time or had a substitute that

he used without additional expense to him.

(Emphasis added).[1]

## B. Sufficiency of the Evidence.

Lomond bases its contention that there was insufficient evidence to support an award for loss of use on two arguments. The first is that the evidence showed only "the reasonable rental value of a similar generator," rather than actual monetary damages by Campbell for loss of use or actual benefit to Lomond. This argument, which is a restatement of the issue discussed above, is without merit for the reasons given there.

■ Lomond's second argument is that the jury did not have sufficient evidence of the rental value of the generator to award for loss of use. The evidence presented by Campbell as to the rental value of the generator consisted of the testimony of Gene Carlson, who had sold and rented machinery, including generators, for approximately three years. Carlson testified that, in his opinion, the reasonable rental value of the type of generator in question in reasonably good operating condition was $1,365.00 per month.[2] Campbell also introduced testimony by Clarence Smelcer, president of Fairbanks Aero Service, Inc., and active in the motor and generator repair business for twenty-four years, that after he had performed minor repairs on the generator it ran "great" and that the generator was in "very good" condition. This is sufficient evidence for the jury to value loss of use damages.

## C. Excessiveness

■ This court has observed, as to the excessiveness of damages, as follows:

The question of whether damages are inadequate, or excessive, is in the first instance committed to the discretion of the trial judge and should be raised on a motion for a new trial. The reason for this is that the judge who presided at the trial and observed all the events that occurred there, and who heard the witnesses and observed their demeanor, is in a far better position than an appellate court to know whether in light of all that transpired at the trial that damages awarded by the jury were so wholly consistent with, or so much less than the proof of damages as reflected by the evidence as to be fairly called [improper].

*Heacock v. Town*, 419 P.2d 622, 623–24 (Alaska 1966) (footnotes omitted). Thus a trial judge has considerable discretion to decide whether damages are excessive, and this court will "only interfere in the exercise [of that discretion] in the most exceptional circumstances to prevent any miscarriage of justice." *Haskins v. Shelden*, 558 P.2d 487, 494 (Alaska 1976) (footnote omitted). *See also ERA Helicopters, Inc. v. Digicon Alaska, Inc.*, 518 P.2d 1057, 1061 (Alaska 1974).

Lomond's argument that the $13,000.00 loss of use award was excessive is first based on his assertion that the rental value of the generator was excessively estimated by Gene Carlson because Carlson based his valuation on newer generators. Lomond also argues that Carlson's estimation of rental value was based on one month's rental and would not be accurate over the

---

1. *See also Koninklijke v. United Technologies Corp.*, 610 F.2d 1052, 1055–56 (2d Cir.1979) (applying New York and Connecticut state law); *Tremeroli v. Austin Trailer Equip. Co.*, 102 Cal. App.2d 464, 227 P.2d 923, 935 (Cal.App.1951); *Hillman v. Bray Lines, Inc.*, 41 Colo.App. 493, 591 P.2d 1332, 1336 (1978); *Meakin v. Dreier*, 209 So.2d 252, 254 (Fla.App.1968); *Pope's Adm'r. v. Terrill*, 308 Ky. 263, 214 S.W.2d 276, 278 (1948); *National Dairy Products Corp. v. Jumper*, 241 Miss. 339, 130 So.2d 922, 923 (1961); *Pittari v. Madison Ave. Coach Co.*, 188 Misc. 614, 68 N.Y.S.2d 741, 742 (N.Y.City Ct. 1947); *Roberts v. Pilot Freight Carriers, Inc.*, 273

N.C. 600, 160 S.E.2d 712, 718 (1968); *Scott v. Southern Railway Co.*, 231 S.C. 28, 97 S.E.2d 73, 76 (1957); *Holmes v. Raffo*, 60 Wash.2d 421, 374 P.2d 536, 541–42 (1962). *See generally* C. McCormick, The Law of Damages 472–79 (1935).

2. The exact application of Carlson's $1,365.00 per month rental value over the ten month period from the time Lomond took possession of the generator until the end of the trial would have yielded $13,650.00 in loss of use damages.

ten months in which Lomond had possession of the generator. However, Carlson testified that the same rental rate would apply for one month or for one year, and, as Lomond stated in his opening brief to this court, Carlson's valuation was based on the "reasonable value of a similar generator."

■ Lomond suggests to this court that a loss of use award should be limited to the value of the property. We explicitly rejected this position in *ERA Helicopters*, 518 P.2d at 1059–60, and an instruction we approved in *Gregory v. Padilla*, 379 P.2d at 956, did the same.

■ Lomond argues that, in any event, a loss of use award may not be "all out of proportion to the fair market value of the goods." *Gregory*, 379 P.2d at 956. In this regard, Lomond asserts that the fair market value of the generator was $575.00, the amount Campbell paid for it, rather than the $8,000.00 at which the jury valued the generator. The jury's valuation of the generator, as with its valuation of the rental value, was based on the testimony of Gene Carlson who testified that, in his opinion, "the fair market value of [the generator] in ... reasonably good condition" was "approximately $8,000.00." Clarence Smelcer, who had tested the generator, testified that it was in a "very good general condition." We find that this testimony gave the jury a reasonable basis to value the generator at $8,000.00. The $13,000.00 loss of use award is not so much higher than an acceptable estimate of the generator's value as to violate the rule of proportionality alluded to in *Gregory*.[3]

## II. PUNITIVE DAMAGES

### A. Jury Instructions

■ Judge Blair gave the jury two instructions that authorized an award of punitive damages if the jury found that the defendants "acted with a reckless indifference to Mr. Campbell's rights and consciously acted in deliberate disregard of those rights."[4] Lomond first argues that the trial court erroneously instructed the jury because two instructions concerning punitive damages were given, rather than one. This argument is without merit. The first instruction emphasized that punitive damages should not be awarded if the defendants acted in good faith, even if they were mistaken. The second instruction provided the standard quoted above.

■ Lomond also argues that the instructions do not adequately describe the conduct required for a punitive damage award because they do not use the word "outrageous." However, while we have used the term "outrageous" in relation to punitive damages, *see Sturm, Ruger & Co., Inc. v. Day*, 594 P.2d 38, 46 (Alaska 1979), *modified*, 615 P.2d 621 (1980), *on reh'g*, 627 P.2d 204, *cert. denied*, 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981),

---

**3.** In *Gregory* we stated:
> To say that the use value of an item may exceed the value of the item does not in our opinion confound a concurrent statement that the use value may not be fixed at an amount all out of proportion to the fair market value of the item itself.

379 P.2d at 956.

**4.** The first instruction concerning punitive damages provided:
> In this case the plaintiff is seeking an award of punitive damages. Punitive damages are awarded to punish persons for conduct that is knowingly and wilfully calculated to cause harm to another person. Punitive damages are not to be awarded when a person acts in good faith to protect his own interests, even if he is mistaken in that belief.

The second instruction provided:

> If you find that defendant Bobby Jones, in taking Mr. Campbell's generator from him, acted with a reckless indifference to Mr. Campbell's rights and consciously acted in deliberate disregard of those rights, you may also assess punitive damages against him to punish him and to deter him and others from similar wrongdoing in the future. If you find defendant Bobby Jones liable for punitive damages, corporate defendant, Ben Lomond, Inc. shall also be assessed punitive damages.
>
> You may also award punitive damages against Bobby Jones and Ben Lomond, Inc. if you find that that either Bobby Jones or Ben Lomond, Inc. acted with reckless indifference to Mr. Campbell's rights and consciously acted in deliberate disregard of those rights in withholding Mr. Campbell's generator from him.

the use of that term is not required. *See Clary Insurance Agency v. Doyle*, 620 P.2d 194, 202–03 (Alaska 1980); *Sturm, Ruger*, 594 P.2d at 46–47.

■ In conclusion, the trial court's instructions as to punitive damages were correct. Even if they had been in error, Lomond approved the instructions at trial and thus we would reject his appeal on this point. *See* Alaska R.Civ.P. 51(a). *See also Clary Insurance*, 620 P.2d at 202; *Saxton v. Harris*, 395 P.2d 71, 73 (Alaska 1964). Lomond did initially object to one of the trial court's punitive damage instructions, however after the trial court clarified the instruction, Lomond's counsel expressly approved it.

### B. Sufficiency of the Evidence

■ Lomond asserts that its conduct, at worst, shows only that it made a good faith mistake, and thus an award of punitive damages was not supported by the evidence. We reject this argument. Although Lomond's representatives testified that they acted in good faith, this testimony was contradicted by Campbell and disinterested third parties on numerous occasions. The jury reasonably could have concluded that Lomond's representatives were not credible witnesses.

### C. Excessiveness

As with his claim relating to excessiveness of loss of use damages, Lomond asserts that the jury's award of $50,000.00 in punitive damages is excessive because it bears no reasonable proportion to Campbell's actual damages. Lomond relies on *Sturm, Ruger*, 594 P.2d at 48, which held that, "[o]ne means of determining if an award of punitive damages is excessive is to compare it with the amount of actual damages."

■ We reject Lomond's argument. This court stated in *Sturm, Ruger* that this comparison was only a rough working scale

in which no definite ratio was prescribed. *Id.* We have subsequently emphasized that:

> Of more importance in determining whether the award is excessive [than the ratio of punitive to actual damages] are the factors listed in *Sturm, Ruger:* "[T]he magnitude and flagrancy of the offense, the importance of the policy violated, and the wealth of the defendant."

*Clary Insurance*, 620 P.2d at 205 (citations omitted).

■ In the present case, the jury reasonably could have concluded that Lomond's conduct was flagrant and that the policy of preventing such conduct was important. Further, a representative of Lomond testified that the company's annual revenues were in the range of one to twenty million dollars. Finally, accepting the jury's valuation of the generator, $8,000.00, and its assessment of the loss of use damages, $13,000.00, the total worth of the compensatory award was $21,000.00. The ratio between the punitive and compensatory award is 2.38:1, which is smaller than the 3.64:1 ratio approved by this court in *Sturm, Ruger* as modified, 615 P.2d 621, 624 (Alaska 1980).[5]

The decision of the superior court is AFFIRMED.

---

5. *See also Alaska Statebank v. Fairco*, 674 P.2d 288, 291, 294 (Alaska 1983) (affirming punitive/compensatory ratio of 2.53); *Clary Ins.*

*Agency v. Doyle*, 620 P.2d 194, 205 (Alaska 1980) (affirming punitive damages approximately twice compensatory damages).