UNITED STATES v. McINTOSH et al.

(District Court, D. Oregon. September 12, 1902.)

No. 4,538.

1. CONTRACTS—CONSTRUCTION—STIPULATION FOR LOAN OF ARTICLES FOR USE.
Under a stipulation by the United States in a contract to lend the contractor certain articles for use in performing the contract, the same to be returned in good condition, or replaced if lost or damaged, the contractor cannot be required to replace articles because of the ordinary wear incident to the use contemplated, but only such as are damaged in excess of such wear, since any other construction of the agreement would make it one of sale, and not of loan.

John H. Hall, for the United States.
James Gleason, for defendants.

BELLINGER, District Judge. This is an action to recover for the value of certain articles supplied to Robert McIntosh, contractor, to launch the Columbia river light vessel No. 50, that had stranded near Mackenzie Head, in Washington state, and not returned by him, and for damages, for other articles so furnished which were returned in a damaged condition. It was stipulated in the contract between McIntosh and the government that the latter should loan to the former such moorings, chains, and other appurtenances as said McIntosh might think would be available for the launching of said vessel, but upon the express condition that said appurtenances were to be returned to plaintiff in good condition, and that such articles as

were lost or damaged should be replaced. In pursuance of this agreement McIntosh received 3,277 pounds of Manilla rope which was not returned, and 4,372 pounds which was returned in a damaged condition. The damaged rope is unfit for the purposes of the government. Nothing but first-class rope is ever issued, and it is changed as often as once every three months, and sometimes oftener. Nothing but new rope is ever issued. The claim on account of damage to the rope is the invoice price, 9.55 cents per pound. The testimony on behalf of the government is to the effect that the damage to the rope is probably not more than the wear and tear for that sort of work. Such being the case, the question arises, what is meant by the agreement to loan appliances to the contractor to be returned in good condition, and replaced when damaged? If the ordinary wear of the rope for that work renders it valueless, and renders the borrower liable for the purchase price, then the loan was not a loan in effect, but a sale of the rope. My conclusion is that by the agreement to loan for a particular use the borrower, under the contract, did not become liable for the ordinary wear incident to that use,—a thing necessarily within the contemplation of the parties when the agreement was entered into,—but became liable only for such damage as is in excess of the use stipulated for. The rope becomes secondhand and of no value to the government by any use, but the agreement to loan was for use. If it necessarily involved payment for the use, it was not a loan; and, if the use necessarily involved the entire value of the thing used, the transaction amounted to a sale of the loaned articles. The government is therefore not entitled to anything on account of wear and tear resulting from the use of the rope returned, and for the rope not returned it is entitled to its value as secondhand rope. This value in the market is from one to five cents per pound,—say three cents per pound. The amount for which recovery is allowed on account of 3,277 pounds of rope not returned is $98.31. The defendants are charged with 45 fathoms of 1½-inch chain, $234.63, and two mushroom anchors, $225. McIntosh testifies that when he gave up the ship it was anchored to the sands with this chain and one of the mushroom anchors, and that Capt. Sebree, who was acting for the government, requested that these articles be left where they were, which was done. They were left for the safety of the ship. The other anchor is not accounted for. Among the other articles with which the defendants are charged are one fourth-class mushroom anchor, of the value of $29.86; one third-class nun buoy, worth $29.41; one second-class concrete sinker, worth $10. It is admitted that these items were received, and they have not been accounted for. Their aggregate value is $69.27. The remaining articles with which McIntosh is charged are: 50 pounds of lambroline, valued at $5.15; 7 first-class key shackles, valued at $11.69; 21 5/8-inch connecting shackles, valued at $1.98; 4 hand lanterns, valued at $5.92; 1 awning, valued at $40; 50 feet 1½-inch rubber hose, valued at $10.50; 50 feet 2½-inch rubber hose, valued at $16.50; 13 tons Newcastle coal, valued at $66.95. The lambroline, rubber hose, and coal were not issued to McIntosh. As to the coal, McIntosh testifies as follows:

"That coal was given to me directly by Captain Taussig. He says: 'You can make any use of it you like. Throw it over, if you want to.' I saved it, and used some for cooking, used some up at the barracks, and gave some of it to the lighthouse keeper at Cape Disappointment. I might have thrown that overboard. There is no mention made of 17 tons of pig iron I saved for the government."

The lambroline, awning, and rubber hose were probably on the ship when McIntosh began the work of attempting to launch it. McIntosh testifies that he knows nothing about them. As stated, these articles are not mentioned in the receipt taken by the government. There is some testimony to the effect that an awning was burned up. There were some articles left on the ship when Wolff took charge. The latter says there was very little left on board, except part of the hawser chain. What this little property remaining was is not stated. The ship went out of McIntosh's possession just as it came in, with certain articles of property thereon of which no account was taken. Under such circumstances McIntosh should be required to account only for what he receipted for under his contract. The articles remaining to be accounted for are 7 first-class key shackles, worth $11.69; 21⅝-inch connecting shackles, worth $1.98; 4 hand lanterns, worth $5.92,—total, $19.59; to which must be added value of rope lost, $98.31; one mushroom anchor lost, $112.50; and other items as above, $69.27,—making a total of $299.67, for which the government is entitled to judgment.