**BURGESS CONSTRUCTION COMPANY,**
Appellant,

v.

**Donald HANCOCK and George Scott Haskins, dba North Star Equipment Rentals, Appellees.**

No. 1765.

Supreme Court of Alaska.

Sept. 20, 1973.

Charles E. Cole and D. Rebecca Snow, Charles E. Cole & Associates, Fairbanks, for appellant.

Stephen C. Cowper, Fairbanks, C. R. Kennelly, Anchorage, for appellees.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, Justices.

## OPINION

ERWIN, Justice.

This case involves a claim by Hancock and Haskins for damages arising out of their rental of four tractors and three belly-dump trailers to Burgess Construction Company and the subsequent return of the

trucks and trailers to appellees in a damaged condition.

The trucks were originally purchased from Burgess Construction Company in 1968 and, apparently, were not in excellent condition at that time. Appellees, Hancock and Haskins, reconditioned the trucks and did a brisk business renting them back to Burgess Construction Company.

In September of 1969, Hancock sent some of the equipment to Livengood, Alaska where Burgess was building a road to the Yukon River. Rental contracts were signed with Burgess but they covered only three belly-dump trailers and one tractor, the other three tractors were apparently sent along as well.[1]

There is a substantial amount of conflicting testimony as to the condition of the trucks when they arrived at the construction site. The appellees state that the trucks and trailers were in good to excellent condition when delivered to Burgess; and Burgess countered by claiming that they were not in good condition.

At the job site, Burgess operated the tractors and belly-dump trailers in constructing the road and there was a substantial amount of testimony pro and con regarding the possible misuse of the equipment, with the appellees prevailing before the jury on the particular issue. When the equipment was returned, the engines of four of the trucks were ruined from various causes; e. g. being run without oil, being run after the switch was on which caused the diesel fuel to dilute the oil, and being run at too high of a RPM causing the valves to float. The injuries to the belly-dump trailers included damage to the doors and the air lines for the brakes.

The jury brought back a general verdict for the appellees in the amount of $12,900. From the subsequent judgment this case was appealed.

Appellant raises three specifications of error: (1) the trial court improperly limit-ed cross-examination of the witness Hancock; (2) that the claim for loss of use was improperly submitted to the jury since there was no evidence to support such an instruction; and (3) the instruction on the burden of proof in a bailment case was erroneous.

We conclude there was no error in limiting the cross-examination of Hancock concerning the identity of the trucks by their "R" numbers. The judge limited identification of these trucks to their actual serial numbers. The "R" mumbers were used so the Burgess foreman could tell how many pieces of appellees' equipment were operational on a given day. The numbers were frequently changed by Burgess; the same truck often had several "R" numbers, and the same number appeared on as many as three different trucks. The trial court has the duty of assuring that the jury was not confused by the testimony at trial. In fact, it might have been error if the court had not taken steps to make certain the trucks were properly identified once it became clear that the references to trucks by "R" numbers were unduly confusing.[2] The court may exclude relevant evidence if it finds that its probative value is outweighted by the risk that it will have a prejudicial effect on the jury, confuse the issues, or mislead the jury. Model Code of Evidence rule 303 (1942); C. McCormick, Law of Evidence § 185, at 438–40 (2d ed. 1972). The court must balance the probative worth against those countervailing harms.

Appellant's second claim of error concerns the submission of the question of damages for loss of use of the belly-dumps to the jury. Such was initially raised by a motion for directed verdict at the close of the plaintiff's evidence and again at the close of all the evidence but there was no objection to the use instruction given by the trial court. We, however, feel that the issue was properly raised in the trial court and, therefore, will be considered upon

---

1. The trial court ruled the rental contracts inapplicable and no appeal was taken from such ruling.

2. 6 J. Wigmore, Evidence, § 1904, at 574–75 (3d ed. 1970).

appeal, even though the appellant did not object to the court's loss of usage instruction or offer any instruction limiting the claim in any way.

It is well established that an owner of equipment may recover for loss of that use of the equipment during the period required for making repairs which could have been made with ordinary diligence.[3] The rental value of a damaged vehicle is one permissible standard for measuring damages for loss of use.[4]

The appellant urges us to adopt the rule of damages that the plaintiff must, as a part of his proof, establish that in fact he hired a replacement for his damaged vehicle before he can establish loss of use for that vehicle.[5] We do not feel that this rule represents the better reasoned approach.[6]

In determining whether error was committed in denying the motion to dismiss the appellees' claim at the close of all the evidence, this court will review the evidence and reasonable inferences therefrom in the light most favorable to the appellees.[7] A review of the evidence reveals that Donald Hancock testified that his trucks were removed from the job on September 29, 1969; and that the Livengood job lasted approximately five weeks after the trucks and trailers were taken from the job. The repair of the gates and air systems of the trailers took approximately 51 hours and there was testimony that this time was necessary to repair the damage caused by Burgess. There was also testimony presented that the rental value of the trailers was approximately $4.00 per hour. Thus, there is testimony to support the loss of use for the trailers in question of 51 hours at $4.00 per hour or approximately $204.00; this is exactly what counsel for appellees argued in his closing argument.

After review of the evidence we find that there is sufficient evidence of loss of use so far as the trailers were concerned that this issue could have been submitted to the jury. The trial court did not err in denying the appellant's motion for directed verdict.

As a final claim of error, Burgess alleges that the trial court erred in instructing the jury that a bailee has the burden of proving that destruction or damage to property in his possession was the product of causes beyond his control and that he exercised due care to preserve the property.[8]

3. *See* Annot., 18 A.L.R.3d 497, at § 6 (1972).

4. *Id.* at § 14.

5. *See* Goode v. Hantz, 209 La. 821, 25 So.2d 604, 605 (1946); Lucia v. DeLage, 36 So. 2d 53, 55 (La.Ct.App.1948).

6. *See* Holmes v. Raffo, 60 Wash.2d 421, 374 P.2d 536 (1962); Meakin v. Dreier, 209 So. 2d 252 (Fla.Ct.App.1968); Malinson v. Black, 83 Cal.App.2d 375, 188 P.2d 788 (1948); Pittari v. Madison Ave. Coach Co., 188 Misc. 614, 68 N.Y.S.2d 741 (N.Y.City Ct.1947).

7. West v. Adminx. of Estate of Nershak, 440 P.2d 119 (Alaska 1968); Rexford v. Saslow, 425 P.2d 611 (Alaska 1967); Otis Elevator Co. v. McLaney, 406 P.2d 7 (Alaska 1965); Ahlstrom v. Cummings, 388 P.2d 261 (Alaska 1964).

8. Instruction 6.
The court instructs you that to entitle the plaintiffs to recover damages as alleged plaintiffs must prove by a preponderance of the evidence that:

1. Defendants operated said equipment in a negligent manner;
2. Such negligence was the proximate cause of damage to said equipment; and
3. The amount in dollars of such damage proximately caused by such negligence, together with the reasonable value of the loss of use of said equipment, all as hereinafter defined.
You will note that under No. 1 above the burden of proof of negligence is upon the plaintiff. This rule has the following qualification: Where property is destroyed or damaged while in the possession of a bailee the bailee has the burden of proving that such destruction or damage was a product of causes beyond his control and that he exercised due care for the preservation of the property.
Accordingly, if you find that the plaintiffs' property was destroyed or damaged while in the possession of the defendant, the defendant has the burden of explaining why the destruction or damage occurred.
. . .

In Harris v. Deveau[9] and more recently in State v. Stanley,[10] this court has approved cases where the trial court had placed the burden of going forward with evidence[11] on a bailee after the bailor had established the bailment and that the items had been returned in a damaged condition. A careful reading of each case indicated that the ultimate burden of proof as to the entire case rested on the plaintiff.

After careful review of the purpose of such a rule in bailment cases, we are now convinced that there is a possibility of confusion in the minds of jurors between the burden of proof[12] and the burden of going forward with the evidence which should be clarified.[13]

We feel it appropriate to shift the entire burden of explanation and proof to the bailee in cases where damage occurs to bailed property during bailment. The very remoteness of many areas of Alaska and the necessity to move goods and equipment to remote areas make it difficult for a bailor to determine the circumstances surrounding the injury or destruction of his property, or in most cases the names of those persons using or responsible for the bailed property.

In contrast, the bailee will have both records and personnel to explain the damage to property within his control. In the huge majority of cases, he is in a position where the only available evidence is within his control.[14] Thus once the bailor proves the delivery of property in good condition to bailee and its damage or total destruction while in the custody of bailee he has established his cause of action. If the bailee wishes to avoid judgment he must explain in the terms of *Deveau* and *Stanley* why the damage or destruction occurred.[15]

Since the instruction herein indicated that the burden had been changed to defendant to explain the damage occurred there was no error in the instruction submitting this issue to the jury.

Burgess also urges that it is not possible for any bailee for use to ever reach the degree of proof required to avoid liability for damages to bailed property and

9. 385 P.2d 283 (Alaska 1963).

10. 506 P.2d 1284 (Alaska, March 5, 1973).

11. The presumption created by the bailment of property would permit the plaintiff to go to the jury on the issue of damage to bailed property. The plaintiff thus avoids a directed verdict for defendant. The bailee could then rely on the absence of plaintiff's proof or present evidence of his own to the jury.

12. The burden of proof places an affirmative duty on a person to present evidence on a particular issue or have the court rule as a matter of law as to that issue.

13. We note a great deal of confusion in the case law on the two separate approaches with their use proceeding almost interchangeable. *Compare* Sky Aviation v. Colt, 475 P.2d 301, 304 (Wyo.1970), Naxera v. Watham, 159 N.W.2d 513, 518 (Iowa 1958), Alamo Airways, Inc. v. Benum, 78 Nev. 384, 374 P.2d 684, 686 (1968), *with* Clack-Nomah Flying Club v. Sterling Aircraft, Inc., 17 Utah 2d 245, 408 P.2d 904, 906 (1965).

14. *Cf.* Nordin v. City of Nome, 489 P.2d 455, 465 (Alaska 1971), where this court stated: Reason dictates that the contractor must show the value of the benefit conferred on the owner, and may not rely on some artificial rule of damages to protect him. Any value testified to by the unhappy owners may be understandably less than the actual benefit he receives. On the other hand, the contractor has cost records and can present expert testimony on value which will provide a basis for arriving at a fair value of the benefit or which, at the very least, can provide a starting point from which the owner can present rebuttal testimony.

15. Alamo Airways, Inc. v. Benum, 78 Nev. 384, 374 P.2d 684, 686 (1968); Clack-Nomah Flying, Inc. v. Sterling Aircraft, Inc., 17 Utah 2d 245, 408 P.2d 904 (1965); Gulf Wave Towing Co. v. Mitchell, 176 F.Supp. 636, 641 (E.D.La.1959).

that the court should reconsider Harris v. Deveau.[16] We note that such an objection was not properly made in the trial court, therefore we decline to reach such an issue herein for it would not constitute plain error.[17]

The judgment of the trial court is affirmed.

16. 385 P.2d 283 (Alaska 1963).

17. We note in passing that the trial court should normally give qualifying instructions in a case where it is anticipated that the bailed property will be used in carrying on the bailee's business and be subject to normal wear and tear. Property which does not stand up under normal use is damaged or destroyed by causes beyond the control of the bailee. He will meet his burden of proof by showing that he exercised due care to preserve the property. *See* United States v. McIntosh, 117 F. 963, 964 (D.C.Or.1902) ; Kennedy v. Gardetto, 306 Mass. 212, 27 N.E.2d 957, 959 (1940) ; 8 C.J.S. Bailments § 27; *see also* Capitol Dairy Co. v. All States Auto Builders, Inc., 339 Ill.App. 395, 90 N.E.2d 278, 280 (1950) ; Threlkeld v. Breaux Ballard, Inc., 296 Ky. 344, 177 S.W.2d 157, 161–162 (1944) ; Beck v. Wilkins-Ricks Co., 179 N.C. 231, 102 S.E. 313, 314 (N.C.1920). In the case at bar there were ample facts to demonstrate the bailee failed to exercise due care.