**ALASKA CONSTRUCTION EQUIPMENT, INC.,**
Appellant,

v.

**STAR TRUCKING, INC., f/k/a Northstar Trucking, Inc., Appellee.**

No. S–11555.

Supreme Court of Alaska.

Jan. 27, 2006.

Brent Edwards and Bruce E. Falconer, Boyd, Chandler & Falconer, LLP, Anchorage, for Appellant.

James D. DeWitt, Aisha Tinker Bray, and Matthew Cooper, Guess & Rudd P.C., Fairbanks, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

We have permitted an owner of property to obtain loss of use damages for the reasonable period of time required to make repairs to the property damaged by a lessee or bailee.[1] We are now asked whether a lessor may obtain loss of use damages even where the lessee caused the property to be totally destroyed and not repairable. We hold that such damages are recoverable during the period of time that is reasonably necessary for the owner to secure a suitable replacement of the property.

## II. FACTS[2] AND PROCEEDINGS

On August 19, 2002 Alaska Construction Equipment, Inc. (ACE) leased a Volvo A–35

---

1. *Burgess Constr. Co. v. Hancock,* 514 P.2d 236 (Alaska 1973).

2. We set out the facts in the light most favorable to ACE, because Star Trucking moved for and

rock dump truck[3] to Star Trucking, Inc. The lease agreement stated that the truck's value was $140,000 and set the rental rate at $17,500 per month. The lease document was a one-page standardized form with a few listed terms and conditions, including the following:

> Equipment maintenance, repairs and care are the sole responsibility of the Lessee. After inspection, Lessee assumes all repairs and maintenance necessary to return the unit in the same condition as it was received, reasonable wear and tear excepted.

Star Trucking took possession of the truck in Glennallen and hauled it to the Fort Knox mine outside Fairbanks. On October 14, 2002, less than two months after the start of the lease, a Star Trucking employee "hooked the bed [of the truck] on an overhead conveyor belt at the Fort Knox mine, and rolled the A–35 onto its side." The incident report noted that the accident "damag[ed] right side of cab, and also caus[ed] right & left cylinders to be torn loose from box; also possible engine damage to be assessed at a later time."

On October 29 Star Trucking moved the damaged vehicle to its yard in Fairbanks. According to Star Trucking, it considered the truck repairable, and at its shop it "immediately disassembled the vehicle, assessed the damage to the vehicle, and ordered parts to repair the vehicle in an effort to ... get it back out on the road as soon as possible." On November 1 the general manager of ACE, Roy Rank, inspected the vehicle in Star Trucking's yard. After "only ten minutes it was clear to [Mr. Rank] that the truck was totaled, especially but not limited to the noticeably bent frame."

On November 4 Rank told Star Trucking that the truck had to be inspected and repaired by a Volvo-certified repair facility, and recommended Construction Machinery Industries, LLC (CMI). Rank later testified to his rationale for requiring inspection and repair by a Volvo-certified facility:

> Because of liability and resale concerns we only have a Volvo certified repair facility do our major repairs. We know a Volvo certified repair facility is going to do it right. We certainly do not want a bad repair job getting someone hurt or something damaged when the truck goes back out on lease. Having major repairs done by a Volvo certified repair facility also assures a well documented heavy maintenance history and preserves the resale value of the truck.... ACE does do routine maintenance and minor repairs on its equipment, and ACE allows its lessees to do the same.

Star Trucking admitted that it was not a Volvo-certified repair facility and that "none of its mechanics were Volvo trained and certified to make repairs to the A–35."

After numerous requests by ACE and some scheduling difficulties, Star Trucking delivered the damaged truck to CMI in Anchorage on November 19. About one week later Rank met with a CMI mechanic, who explained that the truck suffered "major damage, e.g., bent frame and blued (burnt) bearings." On December 9 CMI faxed an estimate for repairs totaling $99,931.69, not including the cost of a new cab. (CMI, acting on Volvo's advice, concluded that the cab needed to be replaced rather than repaired.) According to Rank, after reviewing this estimate with Paul Miller of Star Trucking, "[w]e both felt the truck was totaled." Star Trucking directed its insurer, Fireman's Fund of Seattle, to handle the claim.

Fireman's Fund made numerous offers to ACE, but ACE rejected these offers and demanded nothing less than $140,000, the stated value of the truck in the lease agreement. On May 2, 2003 Fireman's Fund offered to pay $100,000 with ACE keeping the salvage, which had an estimated value of around $45,000. ACE agreed to this offer on May 7, but on May 9 Fireman's Fund stated its belief that this payment would also settle any claim for attorney's fees or for loss of use damages. After receiving the $100,000 check from Fireman's Fund, Star Trucking

---

prevailed on summary judgment below. *Martinez v. Ha*, 12 P.3d 1159, 1162 (Alaska 2000).

**3.** This six-wheeled vehicle weighs 56,660 pounds when empty, stands over eleven feet high, and is thirty-five feet long.

refused to hand the check over to ACE until ACE signed a release of all claims. On May 20 ACE reiterated its belief that the $100,000 settlement only covered property damage, and on May 23 it filed a complaint against Star Trucking for the $100,000 check and for loss of use damages. On July 8 Star Trucking delivered the check to ACE.

Star Trucking later moved for summary judgment on ACE's loss of use damages claim. ACE opposed this motion and cross-moved for summary judgment in its favor on this issue. ACE sought a total of $154,000 in loss of use damages, "based on $17,500 per month from the date of the accident, October 15, 2002, to the date it received the $100,000 Fireman's Fund settlement check from Star Trucking on July 8, 2003."[4] On June 1 Superior Court Judge Richard D. Savell granted summary judgment in Star Trucking's favor without comment, and denied ACE's cross-motion for summary judgment. ACE appeals.

## III. STANDARD OF REVIEW

We review a grant of summary judgment *de novo*, "drawing all factual inferences in favor of, and viewing the facts in the light most favorable to the non-prevailing party (generally the non-movant)."[5] A grant of summary judgment will be affirmed when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law.[6] Whether an owner of property may obtain loss of use damages against a lessee or bailee who caused the total destruction of the leased chattel is a

question of law, which we review using our independent judgment.[7] We will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[8]

## IV. DISCUSSION

### The Superior Court Erred in Granting Summary Judgment to Star Trucking on ACE's Loss of Use Damages Claim.

#### A. ACE has a claim for damages for loss of use.

ACE seeks loss of use damages for a period of time after the accident, even though the truck was destroyed and essentially not repairable. We have not had occasion to determine whether loss of use damages are permissible in these circumstances, so the legal issue is one of first impression in Alaska.

Generally, loss of use damages are available as a form of special or consequential damages for harm to or destruction of personal property.[9] Recoverable special damages are those "that are within the proximate cause limits, that can be proven with a reasonable degree of certainty, and that do not duplicate elements of damage awarded under the general damages headings."[10] The ordinary measure of damages in contract law is the expectation interest, which strives to give the benefit of the bargain to the non-breaching party.[11] For example, where a lessee returns leased property to the owner in damaged condition, the award of damages often includes an award of special loss of use

---

4. The lease agreement set monthly payments at $17,500 per month, as mentioned above. The first invoice (for the period 8/20/02 to 9/19/02) was paid, although ACE credited Star Trucking almost $4,700 for downtime due to vehicle problems. The second invoice (for the period 9/20/02 to 10/19/02) was also paid. But Star Trucking paid nothing on the invoices it received after it rolled the rock truck.

5. *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005).

6. *Id.*

7. *Cent. Bering Sea Fishermen's Ass'n v. Anderson*, 54 P.3d 271, 277 (Alaska 2002) ("The determina-

tion of what law to apply is a legal question for which we use our independent judgment.").

8. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

9. 1 DAN B. DOBBS, LAW OF REMEDIES § 5.15(1) (2d ed.1993).

10. *Id.*

11. *See* RESTATEMENT (SECOND) OF CONTRACTS § 347 & cmt. a (1981) ("Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a

damages to satisfy the owner's expectation interest. If the lessor were merely awarded the decline in market value for its damaged equipment, then the lessor would not be compensated for the economic harm resulting from the lessor's impaired ability to continue leasing out the equipment to other customers during any period needed for repair.

Following this line of reasoning, we have specifically recognized the remedy of loss of use damages in a contract for lease or bailment. In *Burgess Construction Co. v. Hancock*,[12] a lessee-bailee returned equipment to the lessor-bailor in damaged condition.[13] We stated that it "is well established that an owner of equipment may recover for loss of that use of the equipment during the period required for making repairs which could have been made with ordinary diligence."[14] We also stated that the "rental value of a damaged vehicle is one permissible standard for measuring damages for loss of use."[15] We calculated loss of use damages by multiplying the time necessary for repair by the rental value of the equipment, and we rejected the rule that the plaintiff, to recover, must first establish "that *in fact* he hired a replacement for his damaged vehicle."[16]

While we have not previously decided the precise issue presented in this case—whether to allow loss of use damages where the chattel is completely destroyed rather than mere-

ly damaged—we have commented on it in past cases. In *State v. Stanley*,[17] we noted that "there is a dispute [among jurisdictions] as to allowance of damages for loss of use in case of total destruction," but under the circumstances of that case it was unnecessary to take a position on the matter.[18] *Stanley* involved a "constructive total loss" of a bailor's property. The superior court had awarded damages for loss of use for "a reasonable time to accomplish a replacement of the article"—which it deemed to be eighteen months—in addition to general damages compensating for the property's reasonable market value.[19] We affirmed the figure of eighteen months, but we did not comment on the superior court's underlying adoption of the "reasonable time to accomplish a replacement of the article" standard because it had "not been raised as an issue on ... appeal."[20] In a later case we noted, again without resolving it, that "[t]here is a current dispute among courts as to the propriety of allowing loss of use damages in a case involving total destruction of property."[21]

What should be the rule for loss of use damages in cases involving the total destruction of a chattel? We begin by noting that the general trend in other jurisdictions has been to allow loss of use damages in these cases.[22] Similarly, it has been noted that

---

**12.** 514 P.2d 236 (Alaska 1973).

**13.** *Id.* at 237. Even though the parties had created a rental contract for the equipment, we disregarded the contract and treated the transfer of property as a bailment. *Id.* at 239–40. (A bailment is "a delivery of personal property by one person to another in trust for a specific purpose, with an express or implied contract that the property will be returned or accounted for when the specific purpose has been accomplished or when the bailor reclaims the property." *United Truck Rental Equip. Leasing, Inc. v. Kleenco Corp.*, 84 Hawai'i 86, 929 P.2d 99, 103 (App.1996), quoting *Davis v. MLG Corp.*, 712 P.2d 985, 987–88 (Colo.1986).) This distinction is not analytically important for our purposes today, for "[a]t common law, the rental of a motor vehicle creates a bailment for the mutual benefit of the parties." *United Truck Rental*, 929 P.2d at 103. Thus, loss of use damages would be available to the same extent in a lease contract and a bailment.

**14.** *Burgess*, 514 P.2d at 238 (citing Annot., 18 A.L.R.3d 497 at § 6 (1972)).

**15.** *Id.* (citing 18 A.L.R.3d 497 at § 14).

**16.** *Id.* at 238 (emphasis added).

**17.** 506 P.2d 1284 (Alaska 1973).

**18.** *Id.* at 1292–93 & n. 17 (collecting cases on both sides).

**19.** *Id.* at 1292 (internal quotation omitted).

**20.** *Id.* at 1293.

**21.** *ERA Helicopters, Inc. v. Digicon Alaska, Inc.*, 518 P.2d 1057, 1060 n. 5 (Alaska 1974).

**22.** *See, e.g., Reynolds v. Bank of America*, 53 Cal.2d 49, 345 P.2d 926, 927–28 (1959) ("There appears to be no logical or practical reason why a distinction should be drawn between cases in which the property is totally destroyed and those in which it has been injured but is repairable...."); *Long v. McAllister*, 319 N.W.2d 256,

traditional limitations on this kind of recovery were based on a questionable analogy between total destruction loss of use claims and historical trover or conversion claims. Earlier decisions assumed that the owner of the property would be fully compensated for its injury by receiving the market value of the destroyed chattel, making additional loss of use recovery excessive.[23] Jurisdictions permitting loss of use damages in cases of total destruction have rejected this analogy, and its market-value ceiling on recovery, as a "fallacy." [24] As explained by one court:

> When an automobile is damaged through the negligence of another, temporary loss of the use of such vehicle pending repair or replacement is a reasonably foreseeable consequence of the defendant's tortious conduct. Compensation for the temporary loss of use is directed at plaintiff's *economic loss*, the amount of money plaintiff had to pay for rental of a car. This is an injury different in *kind* from *property damage*, the amount of money necessary to repair or replace the damaged vehicle. A plaintiff in a total destruction case deprived of his reasonable loss-of-use expenses has simply not been made whole.[25]

Our case law is in accord with these jurisdictions rejecting the market-value ceiling of recovery for loss of use damages. Indeed, we have indicated that a plaintiff is permitted to recover loss of use damages above and beyond the total market value of the damaged chattel.[26] We therefore see no compelling reason to treat loss of use claims differently where the chattel is totally destroyed as opposed to only partially damaged. We believe that making loss of use compensation available in cases of total destruction will enable damage awards to fully reflect the expectation interest of the owner seeking damages. This expectation interest includes both the expectation that the owner would obtain the benefit of the bargain (loss of use) and that it would have a useful piece of property at the end of the contract (replacement).

 In cases of total destruction, loss of use damages should be permitted for the period of time that is reasonably required to obtain a suitable replacement for the property.[27] Because the act of seeking a replacement is predicated on the property being destroyed, this period includes a reasonable period of time, if any, following the accident that is needed to determine whether the property has in fact been totally destroyed or whether it remains repairable, so long as any delay in reaching this determination is not the fault of the party seeking damages. To obtain loss of use damages, the owner need not necessarily establish as part of its proof that there was an actual attempt or ability to obtain a replacement for the destroyed property.[28] Rather, we adopt the replacement standard because it is a sensible measurement to capture the expectation interest; the

259–61 (Iowa 1982); *Chlopek v. Schmall*, 224 Neb. 78, 396 N.W.2d 103, 108–10 (1986). *See also Dobbs, supra* note 9, § 5.15(2) at 891–92 ("courts today appear to have very generally allowed rental value claims even in cases of complete destruction of the chattel"). This view is also reflected in the Restatement. Restatement (Second) of Torts § 927 (1979).

23. *Long*, 319 N.W.2d at 259 ("Damages for destruction of chattels were based on analogy to conversion. The reasonable market value of the chattel was viewed as adequate compensation under this concept in the common law action of trover."); *Reynolds*, 345 P.2d at 928 (original rule "appears to be the result of historical limitations upon the action of trover at common law").

24. *Long*, 319 N.W.2d at 260.

25. *Bartlett v. Garrett*, 130 N.J.Super. 193, 325 A.2d 866, 867 (1974) (emphases in original).

26. *See Ben Lomond, Inc. v. Campbell*, 691 P.2d 1042, 1047 (Alaska 1984) (holding that award not limited to value of property but may include loss of use); *ERA Helicopters*, 518 P.2d at 1059–60 (award not limited to repair costs, may include loss of use).

27. *Long*, 319 N.W.2d at 261; *Reynolds*, 345 P.2d at 927. *See also Recovery for Loss of Use of Motor Vehicle Damaged or Destroyed*, 18 A.L.R.3d 497 at § 9 (1968).

28. *Cf. Burgess Constr. Co. v. Hancock*, 514 P.2d 236, 238 (Alaska 1973) (rejecting rule that to obtain loss of use compensation for repairable damage plaintiff must first "establish that in fact he hired a replacement for his damaged vehicle"). *Accord United Truck Rental Equip. Leasing, Inc. v. Kleenco Corp.*, 84 Hawai'i 86, 929 P.2d 99, 110 (App.1996) ("a plaintiff's recovery should not be premised on his or her actual ability to purchase a replacement").

damages suffered by the owner of the property are not necessarily affected by whether a replacement was ultimately obtained.[29]

■■■■■ We reiterate our rule regarding the relationship between an award of loss of use damages and an award of prejudgment interest, as discussed in *State v. Stanley*:[30]

> [T]he court awarded interest on the value of the vessel from the date of its loss. Such an award is to compensate for the loss of the use of the funds representing the value of the vessel.... *To grant such an award plus a separate one for damages attributable to loss of use of the vessel constitutes a double recovery.* In order to make a wronged plaintiff whole, under certain circumstances, it may be more appropriate to award the actual, provable damages attributable to loss of use of property than to award interest from the date of loss. *Both interest and an award for loss of use of the property, however, are not permissible.*[31]

Thus, we have made clear that loss of use damages are not available where the party seeking them has already been awarded prejudgment interest on the value of the destroyed property. Prejudgment interest adequately compensates the owner of damaged property for economic loss for the period of time between the accident and the later award of the property's value. As a corollary, loss of use damages may no longer accrue for an owner once the owner has received actual payment for the value of its property, as, for example, where the owner obtains a cash amount pursuant to a settlement agreement.

■■■■■ Because we adopt the rule that loss of use damages are available in cases of total destruction, we conclude that the superior court erred in granting summary judgment

to Star Trucking on this issue. Viewing the facts in the light most favorable to ACE, (1) there was a valid lease for the truck, (2) the accident was the fault of the lessee, Star Trucking, (3) the accident caused total destruction of the truck, and (4) ACE no longer received rental payments or other economic benefits that it otherwise likely would have received from the truck after the truck was destroyed. These facts, if indeed true, would be sufficient to support some award of loss of use damages to ACE. It was therefore error to find that there were no genuine issues of material fact and that Star Trucking was entitled to judgment as a matter of law. Upon remand, the superior court should determine whether the facts support an award of loss of use damages to ACE under the legal standard announced today. If so, the court must calculate a damages award to fully compensate ACE for its expectation interest. This calculation will require findings regarding the proper measure of loss of use damages for ACE [32] and the relevant time period for which such damages should be made available, i.e., what amount of time was reasonably required for ACE to obtain a suitable replacement for its truck.

## B. None of Star Trucking's defenses entitled it to summary judgment.

Consideration of Star Trucking's numerous defenses to loss of use damages does not change our conclusion that summary judgment was improper. We consider each briefly.

### 1. Repudiation by ACE

■■■■ Star Trucking argues that ACE repudiated the lease contract by insisting that a certified facility, and not Star Trucking, repair the damaged truck, thereby preventing Star Trucking's performance of the con-

---

**29.** *See United Truck,* 929 P.2d at 110 ("regardless of whether the plaintiff furnishes the funds to hire a substitute vehicle, he or she still suffers an injury while deprived of the vehicle and should be awarded damages for the inconvenience").

**30.** 506 P.2d 1284 (Alaska 1973).

**31.** *Id.* at 1295 (citation omitted) (emphases added).

**32.** We note that it is commonly said that there are four measures for loss of use damages: "(1) lost profit, (2) cost of renting a substitute chattel, (3) rental value of the plaintiff's own chattel, or (4) interest." Dobbs, *supra* note 9, § 5.15(1) at 875. If the court determines that ACE is entitled to loss of use damages, it may calculate the damages according to whatever measure most accurately compensates ACE for its expectation interest.

tract. Star Trucking's repudiation argument is based on language in the lease that required the lessee to perform "all repairs and maintenance necessary to return the unit in the same condition as it was received, reasonable wear and tear excepted." However, contrary to Star Trucking's argument that ACE's demand for competent repair prevented Star Trucking from performing its contractual duties, the only performance actually demanded of Star Trucking under the contract was the payment of rents for the truck. The repair clause placed the *responsibility* on Star Trucking to repair, but it did not give Star Trucking an absolute *right* to repair such that Star Trucking could control all aspects of a repair job and exclude ACE's participation. In other words, the repair clause was one of Star Trucking's burdens of the contract, not one of its benefits. Therefore, we cannot accept Star Trucking's argument that ACE's requirement for competent repair, in itself, was a repudiation of the contract.

### 2. Termination by ACE

Star Trucking next argues that ACE terminated the at-will lease by re-taking possession of the truck. But even if ACE were found to have terminated the lease contract, it would not follow that ACE could not recover any loss of use damages. Such termination, after all, was occasioned by Star Trucking's destruction of the truck. Thus, the termination might end the time period in which ACE could collect loss of use damages, but it would not change the facts that ACE was harmed by the damage Star Trucking caused to the vehicle, including the economic loss of use of that vehicle, and that it is entitled to some form of relief.

### 3. Failure to mitigate and modification of the contract by ACE

Star Trucking argues that ACE had a duty to mitigate damages that it failed to meet, and that by allowing credits for earlier downtime periods ACE had modified the contract. We have examined these arguments and are satisfied that neither entitled it to summary judgment. Both at the least raise disputed issues of material fact.

## V. CONCLUSION

Loss of use damages are available to an owner of damaged property even where the property has been totally destroyed and is not repairable. Because genuine issues of material fact remain as to whether ACE is entitled to recover loss of use damages for the destruction of its leased truck, we REVERSE the superior court's grant of summary judgment to the lessee, Star Trucking, and REMAND for proceedings consistent with this opinion.

FABE, Justice, not participating.