*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JAMES A. MADONNA, | ) | |
| | ) | Supreme Court No. S-14406 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-10-02202 CI |
| v. | ) | |
| | ) | O P I N I O N |
| TAMARACK AIR, LTD., | ) | |
| | ) | No. 6774 – April 12, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Robert B. Downes, Judge.

Appearances: Thomas R. Wickwire, Fairbanks, for Appellant. Alfred Clayton, Jr., Bliss, Wilkens & Clayton, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Carpeneti, Justice, not participating.]

FABE, Chief Justice.

I.      INTRODUCTION

Tamarack Air, Ltd. negligently damaged James Madonna's airplane while it was on Tamarack's airfield after it had been in Tamarack's shop for routine maintenance. Tamarack offered to fix the plane, but Madonna refused that offer. Instead, he elected to ship the plane to Wyoming and had the plane repaired at the

original factory. Tamarack argued that Madonna had failed to mitigate his damages and refused to compensate Madonna for the full cost of these repairs. A jury awarded Madonna most, but not all, of the cost of having the plane repaired out of state. Madonna now argues that the trial court erred by refusing to let him present several other claims for damages related to the accident. But we find no error and therefore affirm the trial court in all respects.

## II.    FACTS AND PROCEEDINGS

James Madonna owns a two-seat fabric-covered airplane called an Aviat Husky. Airplanes need regular repair, and Madonna orally contracted with Tamarack Air, Ltd. to perform annual inspections and maintenance on his plane. Tamarack regularly serviced Madonna's plane for several years, until, in 2009, while the plane was on Tamarack's airfield following inspection, a Tamarack employee accidentally towed the Husky into two other planes and damaged it.

Vicky Domke, owner of Tamarack, called Madonna to tell him about the accident. A few days later, Madonna inspected the damage and drafted a letter outlining his expectation that Tamarack would be responsible for organizing and conducting repairs on the aircraft. Soon after delivering this letter to Tamarack, Madonna received a reply from Allstate Insurance Company, Tamarack's insurer, informing Madonna that Allstate would pay for the repairs at a shop of his choice, the reasonable cost of alternative transportation, and any loss of value to the aircraft. Allstate's letter also indicated that Madonna was responsible for having these repairs done and mitigating his damages.

Madonna asked Domke for an estimate of the damage, and Madonna and Domke, together with another local mechanic, Steve Conatser, met to discuss the necessary repairs. Domke presented Madonna with details of the necessary repairs, including a list of parts and labor. Domke thought that most of the work could be done

at Tamarack but she recognized that the plane would have to be flown to Conatser's shop for painting and fabric repair. Domke estimated that the needed repairs would cost about $20,000, although that estimate was open-ended because she could not be certain about the extent of the damage until repairs were underway.

Madonna was not satisfied with Domke's repair plan. He worried that Tamarack was "going to patch this thing together, give it a[n] inferior paint job and [that he] was going to get the plane returned in a less than desirable condition." Madonna never gave Domke permission to make the suggested repairs.

Instead, Madonna made arrangements to repair the plane on his own. He solicited repair estimates from three local shops. He consulted a knowledgeable friend for advice. And he finally decided to dismantle the plane and ship it back to the Aviat factory in Wyoming, where it could be rebuilt and repaired. Although the cost of parts and labor was about the same for repair at the factory as local repair, Madonna had to pay much more to have the plane transported to and from Wyoming. Madonna paid to have the Husky disassembled, crated, and shipped to Wyoming; hired a pilot to fly to Wyoming and then fly the Husky back to Alaska; bought insurance for the shipment to Wyoming and the pilot's flight back; and installed in the Husky a special transponder, which was required to make the flight over Canada. All told, Madonna paid more than $50,000 to have his aircraft repaired. Tamarack refused to pay this amount, Madonna sued, and the parties went to trial.

At trial, Tamarack conceded liability for the accident but argued that Madonna had chosen an unreasonably expensive course of repair and thus had failed to mitigate his damages. Madonna presented evidence that only the factory had the necessary equipment (called "jigs") to remedy any twisting of the wings, which can be dangerous in flight. Tamarack presented contrary evidence that several mechanics in Fairbanks had the skills necessary to make satisfactory repairs. While Madonna claimed

$50,909 in damages for the cost of repairs, the jury awarded Madonna $43,878 in damages. It also awarded $5,000 for the cost of chartering a flight Madonna had hoped to make in his Husky. The trial judge awarded 3.75% prejudgment interest on the award, as well as attorney's fees and costs.

Madonna now challenges the award on a number of grounds. He claims that the trial court made seven errors: failure to allow presentation to the jury of a claim for breach of contract; failure to allow presentation of a claim for punitive damages; failure to allow questioning of Domke regarding whether she had received a letter revealing his plan to ship the Husky to Wyoming; denial of Madonna's claims for lost income to his business and for the cost of a charter trip to the Brooks Range; and denial of his claim for the lost interest on the value of the plane while it was damaged. Madonna also challenges the award of prejudgment interest at the statutory rate and the denial of his request for post-trial discovery. We address these arguments in turn.

## III.  STANDARD OF REVIEW

Interpretation of an established contract is a question of law and is reviewed de novo.[1] But more basic questions about the existence, validity, and scope of a contract are questions of fact, which are reviewed under the clearly erroneous standard.[2]

We review a trial court's discovery rulings and decisions to exclude evidence for abuse of discretion.[3] "An abuse of discretion exists only when we are 'left with a definite and firm conviction, after reviewing the whole record, that the trial court

---

[1]     *Cook v. Cook*, 249 P.3d 1070, 1077 (Alaska 2011).

[2]     *Wyatt v. Wyatt*, 65 P.3d 825, 828 (Alaska 2003) (citing *Juliano v. Angelini*, 708 P.2d 1289, 1291 (Alaska 1985)).

[3]     *See Peterson v. Ek*, 93 P.3d 458, 467 (Alaska 2004) (quoting *Fletcher v. S. Peninsula Hosp.*, 71 P.3d 833, 844 (Alaska 2003)) (discovery rulings); *Getchell v. Lodge*, 65 P.3d 50, 53 (Alaska 2003) (decisions to exclude evidence).

erred in its ruling.' "[4] Even where a trial court abused its discretion, though, we will only reverse where "the error affected the substantial rights of a party."[5]

Whether an entire type of damages is allowed is a question of law, which we review de novo.[6] Statutory interpretation is also a question of law, which we review de novo.[7]

## IV.    DISCUSSION

### A.    There Was No Contract With Tamarack To Repair The Plane After The Accident.

#### 1.    Madonna argues that his claims sound in contract, not tort.

The superior court treated this case as a straightforward trial for tort damages. But Madonna has consistently advanced a theory of the case that sounds in contract and is apparently convinced that this approach is preferable. Specifically, Madonna argues that his longstanding oral contract with Tamarack to perform annual maintenance on his plane gave Tamarack more duties after the accident than an ordinary tortfeasor would have. Madonna concedes that this duty to repair and give advice was never written down or even made explicit, but he argues that it was implied by Domke's promises and Tamarack's course of performance. After Tamarack damaged the plane, Madonna argues, it had a duty not only to pay for the repairs, but also to give him

---

[4]    *Getchell*, 65 P.3d at 53 (quoting *Liimatta v. Vest*, 45 P.3d 310, 313 (Alaska 2002)).

[5]    *Id.* (quoting *Dobos v. Ingersoll*, 9 P.3d 1020, 1023 (Alaska 2000)) (internal quotation marks omitted).

[6]    *Alaska Constr. Equip., Inc. v. Star Trucking, Inc.*, 128 P.3d 164, 167 (Alaska 2006).

[7]    *Curran v. Progressive Nw. Ins. Co.*, 29 P.3d 829, 831 (Alaska 2001).

assistance and advice in making those repairs. Madonna attempts to leverage these duties into a claim for punitive damages based on Tamarack's post-accident conduct.

The trial court refused to let Madonna's contract theory go to the jury. At a pretrial hearing, the trial court entertained arguments on the issue and ruled that Madonna would not be allowed to present evidence about any contractual duties Tamarack may have had to repair the plane after the accident.

On the first day of trial, Madonna again attempted to admit evidence that Tamarack had a contractual obligation to help him repair his plane. The trial court again ruled that such evidence would not be admitted, but it allowed Madonna to make an offer of proof and preserve his objection for appeal. Madonna offered two pieces of evidence to support his claim. First, he testified that Domke had promised to "care for [the plane] with all the attention that she would give her own airplane and maintain it in excellent condition." Second, he testified that Tamarack had once refastened, for free, an exhaust clamp bracket it had forgotten to tighten during the annual inspection.[8] Madonna now appeals the trial court's ruling.

### 2.    Tamarack had no contractual obligation to repair the plane post-accident.

We agree with the trial court that Tamarack had no contractual obligation to repair the plane after the accident. Madonna's proffered evidence does not indicate otherwise. The loose exhaust clamp, unlike the accident at issue, was a defect covered by the bargained-for annual maintenance. Tamarack's contractual duty to perform satisfactory maintenance on the plane obliged it to fix any problems that arose during the

---

[8]    Madonna also indicated that Tamarack had once repaired a hole in the fabric that Madonna believed had been caused by the mechanics at Tamarack. He admitted, though, that he had been charged for this repair, so this cannot be the basis of an unspoken agreement to fix the plane free of charge.

maintenance process for no further charge, but here no work was being done on the plane when it was damaged.[9] It was merely resting in Tamarack's parking field when it was accidentally towed into two other planes. Tamarack's resulting obligation to pay for the damage, therefore, has nothing to do with any obligation Tamarack may have had to make annual repairs on the plane.

Madonna also points to Domke's promise to "care for [the plane] with all the attention that she would give her own airplane and maintain it in excellent condition." We have previously held that a contract must have reasonably definite and certain terms to be enforceable.[10] Here, Domke's promise was vague and did not impose a duty beyond her common law obligation to pay for any damage she caused to Madonna's plane.

It is also fatal to Madonna's claim that Domke *did* offer to make repairs on the plane after reviewing the damage with him and estimating the cost. Madonna rejected this repair plan. Madonna cannot now argue that Domke breached some duty to repair the plane herself unless he takes the untenable position that Tamarack had a perpetual obligation to submit repair plans until Madonna was satisfied and accepted one. Any contract to do so would be an unenforceable agreement to agree.[11]

---

[9]     There is surprisingly little evidence in the record concerning how the damage occurred, probably because Tamarack admitted liability for the accident. Both parties agree that the plane was in Tamarack's possession at the time of the accident, but Madonna has never alleged that Tamarack damaged it while actually conducting repairs.

[10]     *Alaska Creamery Prods., Inc. v. Wells*, 373 P.2d 505, 510 (Alaska 1962).

[11]     *Davis v. Dykman*, 938 P.2d 1002, 1009 (Alaska 1997).

### 3. Tamarack's status as bailee does not impose a legal duty to repair damaged property.

Madonna also argues that we held in *Burgess Construction Co. v. Hancock* that a bailee is always obligated to repair bailed property damaged in her possession.[12] But ordinarily a bailee has no fiduciary duty to the bailor and "a bailee's liability is limited to 'loss or injury to the bailed goods caused by [the bailee's] failure to exercise the degree of care of a reasonably careful owner.' No other duties [are] owed."[13] No contrary rule can be found in *Burgess Construction Co. v. Hancock*. That case merely stands for the proposition that a bailee has the burden of explanation and proof if she wishes to avoid liability for damage caused to bailed property in her care.[14] It does not impose a duty on the bailee to fix the damaged property herself in a specified manner.

### B. The Trial Court Did Not Err By Rejecting Madonna's Claim For Punitive Damages.

Madonna argues that Tamarack breached the covenant of good faith and fair dealing implicit in every Alaska contract by refusing to coordinate the repairs to Madonna's plane after it was damaged and by failing to compensate him for the cost of repairs without the need for legal intervention. Madonna sought punitive damages based upon this alleged breach of the implied covenant of good faith and fair dealing. Madonna asked the trial court to submit the question of punitive damages to the jury. Tamarack filed a motion for summary judgment on this point, and the trial judge granted it. Tamarack also asked the trial court to exclude evidence of communications between

---

[12]     514 P.2d 236 (Alaska 1973).

[13]     *Alaska Cont'l, Inc. v. Trickey*, 933 P.2d 528, 536 (Alaska 1997) (quoting *Dresser Indus., Inc. v. Foss Launch & Tug Co.*, 560 P.2d 393, 395 (Alaska 1977)).

[14]     *Burgess Constr. Co.*, 514 P.2d at 239.

Madonna and Tamarack's insurer, which Madonna planned to use to show Allstate's misconduct. The trial court granted this motion too. Madonna appeals these rulings.

Punitive damages are a harsh remedy not favored in law.[15] " '[W]here there is no evidence that gives rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice,' the trial court need not, and indeed should not, submit the issue of punitive damages to the jury."[16] "The fact finder may make an award of punitive damages only if the plaintiff proves by clear and convincing evidence that the defendant's conduct (1) was outrageous, including acts done with malice or bad motives; or (2) evidenced reckless indifference to the interest of another person."[17]

Ordinarily, punitive damages are more readily available in a tort case than a contract case. But Madonna allows that Tamarack did nothing so outrageous as to be sanctioned with punitive damages in tort. Instead, Madonna argues that Tamarack had a contractual duty to help him repair the plane, that Tamarack breached the covenant of good faith implicit in this contract by refusing to make those repairs, and that this breach warrants punitive damages. But we have already held that Tamarack had no contractual obligation to make repairs itself. Moreover, even if such a contract had existed, Madonna's argument that punitive damages are warranted is based primarily on the actions of Allstate, Tamarack's insurer. But we held in *O.K. Lumber Co. v. Providence Washington Insurance Co.* that an injured claimant may not sue the defendant's insurer

---

[15]     *Chizmar v. Mackie*, 896 P.2d 196, 210 (Alaska 1995) (citing *State Farm Mut. Auto. Ins. Co. v. Weiford,* 831 P.2d 1264, 1266 (Alaska 1992)).

[16]     *Id.*

[17]     AS 09.17.020(b).

for breach of the duty of good faith and fair dealing.[18]  Therefore, Madonna's contract-based claim for punitive damages must fail.

> C.  **Madonna Was Not Prejudiced By The Trial Court's Refusal To Allow Him To Question Domke Regarding Whether She Had Received Madonna's August 20, 2009 Letter To Allstate.**

On August 20, 2009, Madonna wrote a letter to Allstate and included the estimated cost of sending the plane to the Aviat factory in Wyoming.  At trial, Madonna tried to ask Domke if she had received or had knowledge of this letter.  Tamarack objected to the question, and the trial court sustained the objection.  Madonna now appeals this ruling.

Madonna argues that receipt of the letter is evidence that Tamarack knew of Madonna's plan to repair the Husky in Wyoming, yet said nothing.  He argues in turn that Tamarack's silence is evidence that the plan was reasonable.  Thus, he claims, the letter was relevant and its exclusion was erroneous.

But even if exclusion of the letter was erroneous, Madonna bears the burden of showing that this evidentiary ruling was prejudicial.[19]  He has not met this burden because he has not shown that exclusion of the letter had a "substantial influence" on the outcome of the trial.[20]

The letter includes Aviat's estimated cost to repair the Husky and Aviat's address in Wyoming.  From this Tamarack could have deduced Madonna's plan to repair the plane out of state.  But the jury's award was far higher than Tamarack's estimated cost of repairing the plane locally, so we must assume that the jury accepted Madonna's

---

[18]    759 P.2d 523, 526 (Alaska 1988).

[19]    *See, e.g.*, *Loof v. Sanders*, 686 P.2d 1205, 1209 (Alaska 1984) (citing Alaska R. Civ. P. 61).

[20]    *Id.* (citing *Martinez v. Bullock*, 535 P.2d 1200, 1206-07 (Alaska 1975)).

argument that it was reasonable to repair the plane in Wyoming. In fact, it appears that the only costs the jury did not reimburse him for were a few expenses associated with unloading the plane in Wyoming.[21] These expenses were related to the method of transportation, not the decision to repair the plane at the factory. Because the verdict already reflects the jury's judgment that it was reasonable to repair the plane in Wyoming, Madonna has not shown that exclusion of the letter was prejudicial. We therefore conclude that exclusion of the letter was not reversible error.

### D. The Trial Court Did Not Err By Precluding Madonna's Claim For Lost Income To His Business.

Madonna is a professor emeritus of geology at the University of Alaska. He currently runs a gemstone shop and museum, selling prospecting and mining equipment as well as valuable rocks and minerals. The shop is only open five months a year, from April to September. Madonna is the only employee, and the specialized knowledge required to run the shop and museum makes it difficult to hire additional help.

Madonna asserts that he was forced to spend a significant amount of time arranging for repairs of his plane after the accident. Madonna claims that this prevented him from working in his shop and significantly reduced his income. He was prepared to present evidence that his earnings for the 2009 year were significantly lower than average. The judge refused to allow Madonna to present this evidence, ruling that,

---

[21] Although it is difficult to determine the precise genesis of the jury's award, it is clear from an examination of the evidence that the jury compensated Madonna for the majority of the expenses he incurred shipping the plane to Wyoming. It appears that the jury only declined to award Madonna the cost of unloading the plane and reinstalling the wings, as well as installing the transponder and other small upgrades and routine maintenance. This interpretation closely tracks portions of Tamarack's closing argument.

without more corroboration or specific evidence, it was too speculative to go to a jury. Madonna appeals this ruling.

As a general rule, an injured party should be compensated for profits lost due to that injury if those losses are reasonably certain.[22] But the jury "must be able to determine the amount of lost profits from evidence on the record and reasonable inferences therefrom, not from mere speculation and wishful thinking."[23]

Madonna has presented no evidence to suggest that the trial court erred by ruling that the claim was too speculative to go to the jury. At oral argument before us, Madonna conceded that he never made an offer of proof beyond testimony about the time it took to address the repairs and evidence that Madonna's shop made less than the prior year. And as the trial court judge pointed out:

> [L]et's assume [the tax returns showing lost profit] come in. The cross examination then goes into his life, his emotional state, his personal life, what's happening in his life . . . there can be a whole bunch of reasons why income is decreased if somebody is running a one-man shop . . . . It's too speculative and it invites too many other side issues that are collateral to this case.

We cannot conclude that the trial court erred by ruling that a claim for lost profits based on this evidence alone was too speculative to reach the jury.

### E. The Trial Court Did Not Err By Refusing To Allow Madonna's Claim For The Cost Of Charter Trips To The Brooks Range To Go The Jury.

Madonna claims that while his Husky was damaged, he wanted to take two charter flights, one to the Black Rapids Glacier and one to the Brooks Range. Madonna

---

[22] *See State v. Hammer*, 550 P.2d 820, 824-25 (Alaska 1976); *Dowling Supply & Equip., Inc. v. City of Anchorage*, 490 P.2d 907, 909 (Alaska 1971); *Suntrana Mining Co. v. Widich*, 360 P.2d 84, 89 (Alaska 1961).

[23] *Hammer*, 550 P.2d at 825.

solicited bids for both trips and received estimates that it would cost $5,000 for a trip to the Black Rapids Glacier and $8,800 for four round trips to the Brooks Range.

The trial court allowed Madonna to ask the jury for compensation for the cost of the Black Rapids Glacier trip, but not the cost of the Brooks Range charter flights. Madonna now appeals the trial court's ruling.

Madonna cites *Burgess Construction Co. v. Hancock* for the proposition that the owner of damaged property is entitled to recover the rental cost of replacement equipment while it is down for repairs.[24] But Madonna apparently waived this claim during discovery. At his deposition, Madonna repeatedly said that he was not claiming damages for being unable to make trips to the Brooks Range in the Husky. And Tamarack raised this objection at trial. One purpose of discovery is to narrow the issues at trial, and a claim waived in discovery ordinarily cannot be resuscitated at trial.[25] We therefore conclude that the trial court did not err by preventing Madonna from asking the jury for the cost of charter trips to the Brooks Range.

**F.      The Trial Court Did Not Err By Refusing To Allow Madonna's Claim For Lost Interest On The Value Of The Damaged Plane To Go To The Jury.**

Madonna argues that he should be compensated for the "lost interest on his investment in the plane" while it was damaged. It appears that this is a claim for the interest Madonna would have earned during the period the Husky was damaged if he had never bought the plane and had instead invested the purchase money.

---

[24]      514 P.2d 236 (Alaska 1973).

[25]      *See McKibben v. Mohawk Oil Co.*, 667 P.2d 1223, 1231-32 (Alaska 1983) (interrogatories requiring party to state in detail facts upon which claim is based are proper in order to narrow the issues), *overruled on other grounds by Wien Air Alaska v. Bubbel*, 723 P.2d 627, 631 n.4 (Alaska 1986).

The trial court did not allow this claim to go to the jury, finding that Madonna would be appropriately compensated for this hypothetical lost return on his money by pre- and post-judgment interest. That analysis is correct.[26] We therefore conclude that the trial court did not err by refusing to allow Madonna's claim to go to the jury.

G. **The Trial Court Did Not Err By Awarding Prejudgment Interest At The Statutory Rate.**

Madonna argues that the money he used to repair his plane would otherwise have earned interest at 10.65% and that prejudgment interest on the jury award should have been set accordingly. The trial court judge ruled that the interest rate was a matter to be determined after damages and refused to let evidence of the higher interest rate go to the jury. After trial, the judge awarded prejudgment interest at the statutory rate of 3.75% and denied Madonna's motion to set a higher interest rate without explanation. Madonna now appeals this ruling, arguing that this case falls within an exception to the statutory interest rate.

Alaska Statute 09.30.070(a) fixes prejudgment interest for all judgments except for "a judgment or decree founded on a contract in writing." Here, the trial court correctly ruled that there was no contract.

Madonna argues that support for his contention can be found in *Tookalook Sales & Service v. McGahan*.[27] In that case, Tookalook sold the plaintiffs a motor

---

[26] *See Pratt & Whitney Canada, Inc. v. Sheehan*, 852 P.2d 1173, 1183 (Alaska 1993) (finding no authority for awarding prejudgment interest on the full value of a damaged plane in addition to repair damages).

[27] 846 P.2d 127 (Alaska 1993).

home.[28] The plaintiffs financed the purchase with a third-party bank.[29] Dissatisfied with the motor home, the plaintiffs rescinded the contract and sued Tookalook to recover the purchase money.[30] A jury found for the plaintiffs, and the trial court awarded interest on the judgment at the rate at which they had borrowed money from the bank:

> In cases where a party borrows money from a third-party lender to meet its contractual obligations, and the contract is subsequently rescinded, the borrowing party may recover interest on the amount borrowed as calculated by using the higher of the contractual interest rate and the statutory interest rate.[31]

Madonna argues that "[s]ince a plaintiff can recover the cost of borrowed funds, Madonna should be able to recover the lost interest from his own investment account. Both are caused by the same thing and both are readily quantified." But in *Tookalook*, the plaintiff had a written contract to repay money at the higher-than-statutory rate. In the current case, Madonna had no such contract. Therefore, we conclude that the trial court did not err by setting prejudgment interest at the statutorily set rate.

**H.    The Trial Court Did Not Err By Denying Madonna's Motion To Compel Post-Trial Discovery And Award Attorney's Fees To Tamarack.**

Along with his motion asking the trial court to set prejudgment interest at a rate higher than the statutory default rate, Madonna also noticed an Alaska Civil Rule 30(b)(6) deposition of "the person at Defendant or its insurer most familiar

---

[28]    *Id.* at 128.

[29]    *Id.*

[30]    *Id.*

[31]    *Id.* at 130.

with the rate of interest or appreciation Defendant's insurer has earned on its investments from June 5, 2009 to the present." Madonna hoped this deposition would reveal that Allstate earned significant interest on the money it saved by not paying for repairs immediately. This, he argues, would have bolstered his case that the statutory prejudgment interest rate was inadequate. Tamarack informed Madonna that it objected to the proposed deposition and would seek sanctions if he persisted with his plan.

Nevertheless, Madonna attempted a telephonic deposition. By all accounts it was a failure. Tamarack offered to have Tamarack's owner testify, but refused to produce anyone from Allstate or anyone with knowledge of Allstate's investments. Madonna, in turn, said that he was not interested in talking to anyone from Tamarack. After the deposition, Tamarack filed a motion for a protective order or for sanctions. A day later, Madonna filed a motion to compel Tamarack to produce a witness pursuant to his deposition notice. The trial court denied Madonna's motion to compel and awarded Tamarack $200 in attorney's fees. Madonna now argues that those decisions were erroneous.

Tamarack makes several convincing arguments that the attempted deposition was improper. Tamarack argues that the time for discovery had closed before trial, that inquiry into Allstate's investments could not possibly lead to relevant information,[32] and that Tamarack did not represent Allstate, nor was Allstate a party to this litigation. We agree with all of these arguments.

---

[32]     Madonna argues that Allstate's return on investment is relevant because, if it is higher than 3.75%, that would bolster his claim that the statutory rate of interest "was far below Madonna's actual loss and (suspected) Allstate's actual gain." This conflicts with our principle of compensation, which looks not to the benefit conferred on Allstate, but to the damage done to Madonna. *See State v. Hammer*, 550 P.2d 820, 824 (Alaska 1976).

Madonna also argues that, in any case, the trial court should have awarded attorney's fees to Madonna, not Tamarack. Citing Alaska Civil Rule 37(d), Madonna argues that attorney's fees are mandatory whenever the opposing party fails to attend a deposition. But this is not true. That rule says that "the court shall require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, *unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.*"[33] Here, the trial court determined that Madonna's deposition notice was improper, and Tamarack was fully justified in any failure to attend. Therefore, the trial court was not bound to award attorney's fees to Madonna. Under Civil Rule 37(a)(4)(B), if a motion to compel discovery is denied, the trial court must award reasonable attorney's fees to the opposing party, unless such expenses would be unjust.[34] Therefore, the trial court did not err by awarding $200 in attorney's fees to Tamarack.

## V.    CONCLUSION

Because the trial court did not err in its rulings, we AFFIRM that court in all respects.

---

[33]    Alaska R. Civ. P. 37(d) (emphasis added).

[34]    "If the motion [to compel discovery] is denied, the court . . . shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust." Alaska R. Civ. P. 37(a)(4)(B).